UNITED STATES, Appellee,

v.

Caroline Elisa VAN HELDEN,
Defendant, Appellant.

No. 89–2184.

United States Court of Appeals,
First Circuit.

Heard Sept. 6, 1990.

Decided Nov. 30, 1990.

Linda Backiel, for defendant, appellant.

Jeanette Mercado Rios, Asst. U.S. Atty.,
with whom Daniel F. Lopez Romo, U.S.
Atty., was on brief, for appellee.

Before BREYER, Chief Judge, Van GRAAFEILAND,* Senior Circuit Judge, and TORRUELLA, Circuit Judge.

VAN GRAAFEILAND, Circuit Judge.

Caroline Elisa Van Helden appeals from a judgment of the United States District Court for the District of Puerto Rico which followed a jury trial before Judge Jaime Pieras. The judgment, which we now affirm, convicted appellant on three counts of violating 21 U.S.C. § 841(a)(1) (possession with intent to distribute cocaine), 21 U.S.C. § 952(a) (importation of cocaine into the customs territory of the United States), and 21 U.S.C. § 955 (possession of cocaine aboard an aircraft arriving in the customs territory of the United States). The customs territory in the instant case was Airport Luis Munoz Marin in San Juan, Puerto Rico. Van Helden and her traveling companion Jose Mauricio Correa Chaparro (Correa) entered Puerto Rico on June 15, 1989 while returning from Bogota, Columbia to Amsterdam, Holland. Correa was indicted on the same three counts, and each count alleged that the two defendants aided and abetted each other in the commission of the unlawful acts. 18 U.S.C. § 2.

The cocaine, which totaled about 3400 grams, was contained in eight small bags that were hidden inside the false inside walls of a suitcase. The Government's principal witness was Carlos Aquino, a United States Customs Inspector. Aquino testified that, when he pulled the suitcase from a line of arriving luggage, he noticed that it was very heavy. He also noticed a strong odor of perfume emanating from it. When Aquino opened the suitcase, he found no perfume. He did, however, detect a strong smell of glue, which indicated to him that someone had been tampering with the suitcase. He scratched the inside of the suitcase walls to determine whether there was a false partition inside that prevented the scratching from being felt on the outside of the luggage and decided that an obstruction did exist. He then removed the suitcase's contents, consisting primarily of female belongings, raised the upper hinged lid of the suitcase and let it fall against his hand to feel the weight. When the hinged portion so tested proved to be unusually heavy, Aquino used a sharp probe to discover the presence of the cocaine.

There was an identification tag on the suitcase that contained Van Helden's name and address. There also was a baggage claim tag that matched the baggage receipt attached to Van Helden's flight ticket. The baggage tag contained a control number that the airline used to identify both the luggage and the passenger, and this also identified Van Helden as the owner or possessor of the suitcase. Aquino arrested Van Helden and gave her the proper *Miranda* warnings, which she said she understood.

Phil Jessar, a DEA special agent, then was called to the airport, introduced to Van Helden and Correa, and informed of what had transpired. Jessar gave Van Helden her second *Miranda* warnings, which she again stated she understood. Jessar then testified without objection as follows:

Q After that what happened?

A She advised me that she wanted to tell me what happened.

Q And what did she say?

A She told me that in Colombia she had a lot of stuff to bring back and she needed an additional suitcase to carry back all the stuff that she had. She recalled asking many friends or telling many friends that she needed an additional suitcase. At one point, she returned to her hotel room and she told me that the suitcase just arrived in her hotel room. That she didn't know where it came from. At that point she utilized it.

Following a short delay while the customs agents completed their paperwork, Van Helden and Correa were taken to the DEA office and routinely processed. They were ordered detained pending trial, which was scheduled for August 17, 1989. Correa pled guilty on that day, and Van Helden went to trial three days later.

* Of the Second Circuit, sitting by designation.

On the same day that Correa pled guilty, Van Helden's counsel made a motion *in limine* to preclude the Government from using certain photographs of Van Helden that were found in Correa's luggage. Several of these pictures allegedly showed Van Helden sorting, cutting and smoking cocaine. Another showed Van Helden's sunburned back, with the large white letters "KOKE" printed across it. For good reason, Van Helden's attorney was anxious to keep these pictures from the jury. With the Government's consent, the district court ordered that the pictures could be used only for cross-examination if either Van Helden or Correa testified.

Neither Van Helden nor Correa testified. Van Helden's defense consisted of several hearsay statements attributed to Correa to the effect that the cocaine was his and that he was the only one who knew it was in Van Helden's suitcase. Van Helden's counsel also introduced evidence that on one occasion Van Helden became angry at Correa and attempted to strike him.

■ Van Helden's first argument for reversal—that the evidence was insufficient to support the verdict—can be disposed of quickly. The precepts that should guide a court in reviewing a jury verdict have been reiterated so often as to become almost a shibboleth. Thus, we have stated time and again that the evidence must be examined in its entirety in the light most favorable to the Government to determine whether a rational trier of fact could have found guilt beyond a reasonable doubt and that the Government may prove its case by circumstantial evidence that need not exclude every reasonable hypothesis of innocence. *See, e.g., United States v. Smith*, 680 F.2d 255, 259 (1st Cir.1982), *cert. denied*, 459 U.S. 1110, 103 S.Ct. 738, 74 L.Ed.2d 960 (1983); *United States v. Patterson*, 644 F.2d 890, 893 (1st Cir.1981); *United States v. Concepcion Cueto*, 515 F.2d 160, 161–62 (1st Cir.1975). Tested in accordance with these precepts, the Government's proof in the instant case clearly supported the jury's verdict.

■ As background for the specific incidents of June 15, 1989, the jury knew that Van Helden had flown thousands of miles from Holland to notorious Colombia for a stay of only three weeks. Evidence that the suitcase containing the cocaine belonged to Van Helden was overwhelming. Proof that the suitcase contained Van Helden's clothing was strong circumstantial evidence that she packed it. Proof that the suitcase was overweight and obviously had been tampered with also was strong evidence that Van Helden knew of the drugs hidden behind the false partition. Circumstantial evidence is intrinsically no different from testimonial evidence, *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954), and is entitled to similar weight, *Joseph v. Fair*, 763 F.2d 9, 10 (1st Cir.1985). In the instant case, it furnished more than adequate support for the jury's verdict.

Van Helden's second claim of error is based upon alleged deficiencies in the district judge's charge. In the district judge's instructions to the jury at the start of trial he told the jurors on three separate occasions that Van Helden was presumed innocent. When the prosecutor opened, she too stressed that Van Helden was presumed innocent. When defense counsel summed up, she referred to the prosecutor's opening remarks concerning the presumption of innocence and stressed their importance. In his charge to the jury, the district judge told the jurors that it was his job to decide what rules applied; that he already had explained some of them, and that he would explain others to them before they went to the jury room. He told the jurors that the indictment was "only a charge" and that in order to find Van Helden guilty the jury had to be convinced beyond a reasonable doubt that she committed the crimes as charged. He then referred at least fifteen times to the Government's burden of proving the particulars of each and every charge beyond a reasonable doubt.

■ Despite all this, Van Helden's appellate counsel, relying principally on *Taylor v. Kentucky*, 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978), argues that the district court's unobjected-to failure to repeat the five-times reiterated admonition to the jury

concerning the presumption of innocence constituted reversible error per se. Giving counsel the benefit of the doubt, we are prepared to treat as careless, rather than deliberate, counsel's erroneous statement at page 29 of her brief that the Supreme Court's opinion in *Kentucky v. Whorton,* 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979), limiting the scope of *Taylor,* was intended to apply only to state cases. Referring specifically to *Taylor,* the Court's per curiam majority in *Kentucky v. Whorton* said that "the Court did not there fashion a new rule of constitutional law requiring that such an instruction be given in every criminal case." *Id.* at 788, 99 S.Ct. at 2089. It concluded that "the failure to give a requested instruction on the presumption of innocence does not in and of itself violate the Constitution," and that it "must be evaluated in light of the totality of the circumstances...." *Id.* at 789, 99 S.Ct. at 2089.

In *United States v. Ruppel,* 666 F.2d 261, 274–75 (5th Cir.), *cert. denied,* 458 U.S. 1107, 102 S.Ct. 3487, 73 L.Ed.2d 1369 (1982), a case strikingly similar to the instant one, the Fifth Circuit applied the *Kentucky v. Whorton* test as follows:

> The district judge charged the jury on the presumption of innocence at the beginning of the trial and referred to these instructions at the outset of his final charge. Appellant's counsel referred to the presumption of innocence during his closing argument. Given this background, we are unwilling to believe that the jury retired to deliberate less than fully aware of the presumption of innocence.

■ Although we agree that the court below should have instructed the jury in its charge on the presumption of innocence, like the court in *Ruppel,* we are unwilling to believe that the jury in the instant case "retired to deliberate less than fully aware of the presumption of innocence." *See also United States v. Littlefield,* 840 F.2d 143, 146 n. 1 (1st Cir.), *cert. denied,* 488 U.S. 860, 109 S.Ct. 155, 102 L.Ed.2d 126 (1988).

The district court's charge on "reasonable doubt" was taken verbatim from all but the last sentence of *Federal Judicial Center, Pattern Jury Instructions* (1987), an important fact that appellant's counsel did not deem worthy of mention. Instead, counsel devoted five pages of her brief to an argument that the charge was prejudicially improper. Referring to the omitted sentence, counsel misstated legal precedent in such a fashion as to raise once again the question whether the misstatement was made carelessly or intentionally. At page 34 of her brief, counsel stated that Judge Pieras "narrowly averted a patently erroneous instruction" by deleting the last sentence and that "inclusion of such language [the last sentence] would have automatically led to reversal." As authority, counsel cited *United States v. McBride,* 786 F.2d 45, 52 (2d Cir.1986), where the court *refused* to hold that "the use of the 'real possibility' language [as used in the omitted sentence] constituted reversible error."

The district court's charge on aiding and abetting also was taken intact from the suggested charge in *Pattern Jury Instructions, supra,* a fact that appellant's counsel again neglected to note. Appellant's argument (Appellant's Brief at 35) that the district court should have provided a "significant gloss on the word 'helped' beyond its colloquial meaning" leaves us at sea.

■ Appellant's final claim of error is based upon alleged ineffective assistance of counsel. Our review of the record satisfies us, however, that trial counsel represented Van Helden as zealously as has appellate counsel and perhaps was more careful not to let her zeal lead her astray. Appellate counsel's principal contention is that trial counsel failed to present the only available defense, *i.e.,* the testimony of Correa. This argument disregards the understandable desire of both Van Helden and her counsel to keep the jury from seeing the damaging photographs. Appellate counsel's statement that "[t]rial counsel had no reason to anticipate that Correa's testimony would admit impeachment by the photographs" (Appellant's Brief at 43) once again distorts the true facts. At the conclusion of the *in limine* hearing,

the district court, referring to the photographs, said:

> I have not excluded anything she has five (5) photographs here, and I did not allow her to use them in direct examination, I will allow her to use them on cross examination for the purpose of impeachment. That will cover impeaching anybody that got over there they could be impeached with these photos. Whether it's the defendant, or the co-defendant whose [sic] going to plead guilty.[1]

■ Appellant next argues that trial counsel was derelict in not seeking to suppress "Defendant's Statements admitting Possession of the Suitcase." Since, as we already have held, other evidence introduced by the Government established beyond a reasonable doubt that the suitcase containing the drugs belonged to Van Helden, trial counsel's failure to seek suppression of her admission of possession was at most harmless.

Other allegations of ineffective assistance are of insufficient merit to require discussion. We point out only that they have not overcome the strong presumption that counsel rendered adequate assistance, *see Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and appellant has not shown that, "but for counsel's unprofessional errors, the result of the [trial] would have been different." *Id.* at 694, 104 S.Ct. at 2068; *see Gardner v. Ponte*, 817 F.2d 183, 187 (1st Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 134 (1987).

For all the foregoing reasons the judgment of the district court is

*Affirmed.*

---

1. We commend appellate counsel for her enthusiastic efforts on behalf of her client. However, we remind her that, while a lawyer owes a duty to her client, she also owes a duty to the court, a duty of honest disclosure concerning both the law and the facts.

It is appellate counsel's professional duty to be scrupulously accurate in referring to the record and the authorities upon which he relies in his presentation to the court in his brief or oral argument. He must not mislead the court by misrepresenting the record. Vigorous representation is admirable, but it does not permit misrepresentation.
*Frausto v. Legal Aid Society of San Diego, Inc.*, 563 F.2d 1324, 1327 n. 8 (9th Cir.1977). *See also Quality Molding Co. v. American National Fire Ins. Co.*, 287 F.2d 313, 315–16 (7th Cir.), *cert. denied*, 368 U.S. 826, 82 S.Ct. 45, 7 L.Ed.2d 29 (1961).