**UNITED STATES, Appellee,**

v.

**Luis Eduardo MAHECHA–ONOFRE, Defendant, Appellant.**

No. 90–1405.

United States Court of Appeals, First Circuit.

Heard March 6, 1991.

Decided June 20, 1991.

**624**

Julia M. Garriga, by appointment of the Court, for defendant, appellant.

Antonio R. Bazan, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., was on brief, for appellee.

Before BREYER, Chief Judge, TORRUELLA and SELYA, Circuit Judges.

BREYER, Chief Judge.

Luis Mahecha Onofre appeals his conviction and 146 month prison sentence for unlawfully bringing cocaine into the United States. *See* 21 U.S.C. §§ 841(a)(1) (possession with intent to distribute); 952(a) (importation of controlled substance in United States); 955 (controlled substance aboard aircraft). He makes three arguments. We find none of them convincing.

■ First, Mahecha says that the evidence was not sufficient to support the convictions, in particular the conviction for possessing cocaine with intent to distribute it to others. The evidence shows, however, that, on July 27, 1989, Mahecha was a passenger on Iberia Airlines flight 910, which stopped in Puerto Rico on its way from Bogota, Colombia, to Madrid, Spain. Customs officials, examining passenger luggage, found two odd (especially heavy and hard) suitcases that had a strong chemical odor and screws instead of rivets. They scratched the sides of the suitcases and performed a field test that indicated the suitcases themselves were made of cocaine. Later testing showed that the suitcases contained about 2.5 kilograms of cocaine bonded chemically with the acrylic suitcase material. Customs agent Carlos Ruiz testified that the suitcases had name tags with Mahecha's name and two baggage tags with numbers that matched claim checks on Mahecha's airline ticket. Mahecha admitted the suitcases were his, but he said he was a legitimate businessman, on his way to Spain to look for parts for machines which produce polyethylene and to establish a wholesale shawl distributing system. He added that he had bought the suitcases in April at a warehouse that sold stolen goods in Bogota.

This evidence, in our view, is more than sufficient to sustain a conviction. The jury might have disbelieved Mahecha's testimony. It might have thought it most unlikely that a legitimate businessman would set out for Spain knowing as few details about machines which produce polyethylene or the shawl industry as Mahecha's testimony suggests he knew. It might have questioned that Mahecha was on a business trip when the company he allegedly represented did not pay for his airline ticket or give him money (or a letter of credit or otherwise authorize him) to buy the equipment Mahecha said he *thought* was available in Spain. It might have thought it most unlikely that one could buy suitcases made of cocaine at a Bogota warehouse. It might have thought (to mention one detail) that Mahecha pasted old Eastern Airlines stickers all over the suitcases to make them look used and less suspicious since Mahecha testified that he had never in fact flown on Eastern Airlines. And, it might then have concluded that a person carrying suitcases with about 5 pounds of cocaine chemically bonded with the suitcase material was part of a professional drug smuggling operation. We cannot say that a reasonable juror could *not* reason in this way; or that such a juror *must* have a reasonable doubt about the conclusion. That being so, we must find the evidence sufficient. *See, e.g., United States v. Gomez–Ruiz*, 931 F.2d 977, 978–79 (1st Cir. 1991) (matching baggage claim tags and keys to suitcases containing cocaine found on appellant's person sufficient evidence); *United States v. Van Helden*, 920 F.2d 99, 101 (1st Cir.1990) (appellant's clothes were in suitcase with same baggage claim number as on appellant's ticket; evidence sufficient); *see also United States v. Luciano Pacheco*, 794 F.2d 7, 10–11 (1st Cir.1986).

■ Second, Mahecha says that the Government did not properly authenticate the suitcases that it introduced into evidence at his trial. That is to say, it did not

show that the suitcases introduced at trial were both 1) the suitcases that customs officials seized at the airport and 2) the suitcases that Drug Enforcement Agency chemists in Miami found contained the cocaine. As the federal rules of evidence point out, however, the "authentication [requirement is] . . . satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). And, here the evidence was more than sufficient. The record shows that the two bags introduced into evidence at trial were black, made of a cocaine/acrylic mixture, were oddly shaped and unusually hard, had scratched upon them the initials of customs agents, that they had several blue scratches where they had been field tested for cocaine, that they had Eastern Airlines tags pasted on them, and that they had each had a baggage tag tied to the handle, one with the number 004501 and the other with the number 004502. A customs official, Carlos Ruiz, testified at trial that the bags that he seized at the airport matched this description, that he had scratched his initials on them, and that his testing them at the airport for cocaine involved scratching them and exposing them to a chemical that (in the presence of cocaine) turned them blue. The customs agent also noted that the suitcases contained unusual rivets, which were handmade. A DEA agent, Victor Ayala, also testified at trial that the suitcases admitted into evidence were the same ones which he took to the DEA laboratory in Miami. In addition, Mahecha testified at trial that the bags introduced into evidence were his. Finally, the chemist from the Miami laboratory identified the bags at trial as the ones he had tested. He said that he had placed a special laboratory seal on the bags he had tested and he identified that seal as the one placed on the bags. There is no evidence of any tampering with the suitcases from the time they left the airport until the time they arrived in the courtroom. Consequently, authentication was legally proper. *See United States v. Williams*, 809 F.2d 75, 89–90 (1st Cir.1986), *cert. denied*, 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 377 (1987) (authentication requirement satisfied if it is "reasonably probable that the evidence had not been altered since the occurrence of the crime"); *see also United States v. Gomez–Ruiz*, 931 F.2d at 979; *United States v. Franchi–Forlando*, 838 F.2d 585, 588 (1st Cir.1988).

■ Third, Mahecha argues that the court committed a legal error, when, for purposes of sentencing, it counted the total weight of the suitcases, minus all metal parts (about 12 kilograms in all), instead of the weight of the cocaine itself (about 2.5 kilograms). The relevant statute and sentencing guideline provide a minimum 120 month prison term for possessing with intent to distribute five kilograms or more "of a *mixture or substance containing* a detectable amount" of cocaine. *See* 21 U.S.C. § 841(b)(1)(A) (emphasis supplied); United States Sentencing Commission, *Guidelines Manual* § 2D1.1 (November 1989). But, Mahecha says, the "suitcase/cocaine" chemically bonded material was not a "mixture or substance." The Supreme Court, however, recently considered and rejected a virtually identical argument, in respect to the drug LSD carried on blotting paper. *See Chapman v. United States*, —— U.S. ——, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). The Court concluded that, for sentencing purposes, the court is to count the weight of both, for the LSD is mixed with the blotting paper. The Court concluded that the words "mixture" and "substance" are to be given their ordinary meaning. It rejected the claim that the blotting paper is a "container" for the drug, like a glass vial, or an automobile, because the "drug is clearly not mixed with a glass vial or an automobile; nor has the drug chemically bonded with the vial or car." *Id.* at ——, 111 S.Ct. at 1926. And, the Court reasoned as follows:

> LSD is applied to blotter paper in a solvent, which is absorbed into the paper and ultimately evaporates. After the solvent evaporates, the LSD is left behind in a form that can be said to "mix" with the paper. The LSD crystals are inside of the paper, so that they are commingled with it, but the LSD does not chemically combine with the paper. Thus, it retains a separate existence and

can be released by dropping the paper into a liquid, or by swallowing the paper itself. The LSD is diffused among the fibers of the paper. Like heroin or cocaine mixed with cutting agents, the LSD cannot be distinguished from the blotter paper, nor easily separated from it. Like cutting agents used with other drugs that are ingested, the blotter paper, gel, or sugar cube carrying LSD can be and often is ingested with the drug.

*Id.*

■ The Supreme Court's reasoning applies to the present case with one exception. Unlike blotter paper or cutting agents, the suitcase material obviously cannot be consumed; and the cocaine must be separated from the suitcase material before use. We do not believe, however, that this fact alone can make a difference to the outcome, for "ingestion" would not seem to play a critical role in the definition of "mixture" or "substance." Indeed, one reason why Congress and the Sentencing Commission have specified that courts not consider drug "purity" in imposing sentence is that "weight" and "purity" both, roughly speaking, correlate with the seriousness of the crime. That is to say, a defendant who has *more* of the drug is also likely to have *purer* drug (not in *every* case, but, very *roughly* speaking, in many cases). Hence, Congress determined that the effort to determine purity is not worth the extra precision (in terms of correlating punishment with crime seriousness) that doing so might produce. Insofar as Congress engaged in this kind of reasoning, it is worthwhile pointing out that the effort required to create a chemically-bonded cocaine/acrylic suitcase suggests a serious drug smuggling effort of a sort that might warrant increased punishment. Regardless, the suitcase/cocaine "mixture" or "substance" fits the statutory and Guideline definitions as the Supreme Court has recently interpreted them in *Chapman.*

The judgment of the district court is

*Affirmed.*