March 9, 1993
 [NOT FOR PUBLICATION]

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 

No. 92-1147

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 JUAN CARLOS VELEZ-POSADA,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Jose Antonio Fuste, U.S. District Judge]
 

 

 Before

 Selya, Circuit Judge,
 
 Coffin, Senior Circuit Judge,
 
 and Stahl, Circuit Judge. 
 

 

 Enrique Velez-Rodriguez for appellant.
 
 Juan Carlos Velez-Posada on brief pro se.
 
 Jose A. Quiles-Espinosa, Senior Litigation Counsel, with whom
 
Daniel F. Lopez-Romo, United States Attorney, and Hernan Rios, Jr.,
 
Assistant United States Attorney, were on brief for appellee.

 

 

 COFFIN, Senior Circuit Judge. Defendant appeals from
 

judgments of conviction for importing cocaine into the United

States, 21 U.S.C. 952(a), and for possessing a non-listed

controlled substance on board an aircraft, 21 U.S.C. 955. In

addition to having read appellate counsel's brief and listened to

oral argument, we also have read supplemental and reply briefs

filed by appellant himself. Our conclusion, after giving due

attention to all claims, is that we must affirm the judgments

below. 

 A. Sufficiency

 We address first whether the evidence was sufficient to

support the verdicts. Appellant testified to a series of events

beginning with meetings at his father's bar in Medellin,

Colombia, with two men who said that appellant owed them a favor

and who wanted his passport number and photographs; continuing

with a rendezvous at a street corner; a taxi ride to the airport

and a flight to the island of San Andres; the receipt of two

heavy suitcases supposedly containing clothes, as well as an air

ticket (purchased by one person and reconfirmed by another) for

travel from Nicaragua to Panama and then to Madrid, and $2,000 in

cash; and subsequent travel to Panama for a three-day stay during

which appellant called home a number of times but did not reveal

his whereabouts, fearing threatened harm to his family if the

truth were told. He also expressed his apprehension that unnamed

persons were plotting to cut out one of his body organs. 

 Appellant was apprehended when his plane landed in San Juan.

He had manifested nervousness and the customs officials'

suspicions were aroused by the fact that his passport revealed

exits from a country less identified with narcotics trafficking

than Colombia. The two suitcases, bearing the claim numbers on

his ticket, emitted a chemical odor; when samples of the suitcase

material were tested, they revealed the presence of cocaine.

Appellant, a 22-year-old student, whose earnings in connection

with his father's bar approached $13 a month, was found with cash

and records of expenditure totalling over $4,000.

 The most important guide to note is that the jury was not

obligated to believe appellant's testimony.It could disbelieve

part or all of it. It also could conclude that the picture of a

young man going without information as to what he was carrying,

whom he had met, precisely where he was to go or whom he was to

see upon arrival in Madrid, possessed of two excessively heavy

suitcases, smelling of chemicals though purportedly carrying only

clothes and a substantial amount of cash, was an unlikely one.

As we said in a similar case involving an air passenger en route

from Colombia to Madrid with cocaine-impregnated suitcases, "We

cannot say that a reasonable juror could not reason in this way;
 

or that such a juror must have a reasonable doubt about the
 

conclusion." United States v. Mahecha-Onofre, 936 F.2d 623, 624
 

(1st Cir. 1991) (emphasis in original).

 -3-

 B. Expert Testimony

 Appellant also challenges the testimony of a U.S. Customs

chemist, who had been qualified as an expert, and who testified

about the tests he had made on material extracted from the

suitcases. The grounds for challenge are that the testimony was

misleading and confusing as to the presence and amount of

controlled substance, and that the testing technique used by the

witness was not trustworthy. The witness possessed a B.S. degree

in chemistry from the University of Puerto Rico, had done three

years of graduate work, and had spent five years in training

activity while on the job. He had performed hundreds of tests a

year, and had been qualified as an expert in a number of cases.

He testified that he had had experience on only two prior

occasions with drug-impregnated luggage but had through reading

known how to conduct accurate testing. 

 At the end of cross examination as to qualifications,

defendant's trial counsel said, "That's all, your Honor."

Whereupon the court allowed examination to proceed. At the end

of cross examination directed at the testing and at the method

used in extrapolating the percentage of cocaine found in the

samples to determine the amount present in the suitcases, counsel

simply stated that she had no more questions. No objection

having been made at any time to the qualifications of the

witness, the method or the results of testing, appellant's heavy

burden is to demonstrate plain error to the extent that manifest

injustice will result if the judgment is allowed to stand. The

 -4-

record does not allow appellant to carry this burden

successfully. It makes clear that although the method of

concealing cocaine by impregnating suitcase liners with the drug

may be novel, the technique of sampling, determining percentage

of the drug in the samples, and extrapolating to ascertain the

total amount of contraband in the two suitcases was not

particularly novel or exotic. The specific half dozen tests to

which the samples were subjected to determine the presence of

cocaine base, such as ultraviolet spectrophotometric and gas

chromatography tests, have been widely accepted. The method of

determining the quantity of cocaine base contained in the two

suitcases was explained carefully and at length, with no

suggestion that the method was novel. Moreover, for purposes of

sentencing, the court used an amount less than one third of that

extrapolated by the witness.

 In his pro se reply brief, appellant has cited a number of

cases, such as Turpin v. Merrell Dow Pharmaceuticals, Inc., 959
 

F.2d 1349, 1352 (6th Cir. 1992) (involving the proof of causation

of Bendectin birth defects), where the state of scientific

studies, literature, and opinion is in such turmoil that courts

bring to bear "close judicial analysis" of proposed expert

testimony. There is nothing in this record to place this case in

the company of those at the cutting edge of scientific inquiry.

 C. Other Issues

 Appellant was allowed to file supplemental and reply briefs

raising additional issues. None of these was preserved in the

 -5-

trial court. Our consideration of them is therefore limited; we

review only to prevent a serious miscarriage of justice. See
 

United States v. Newman, No. 91-2303, slip op. at 15 (1st Cir.
 

Dec. 31, 1992).

 1. The fact that the indictment charged an amount of

contraband (10.9 kilograms of cocaine) greatly in excess of the

amount proven (1,547 grams of cocaine base) is not a basis for

reversal. The discrepancy between charge and proof did not mean

that a different or an additional offense had been proven. The

petit jury operated under proper instructions for weighing the

evidence and in fact acquitted on Count I (charging possession of

a large enough amount to indicate an intent to distribute),

showing that it was not misled into thinking that over 10

kilograms of cocaine were involved.

 2. The same observation disposes of appellant's contention

that Count III could not stand without Count I. 

 3. The fact that the indictment charged that the defendant

"knowingly and willfully" committed the offenses, whereas the

statutes contained no such requirements, could only help, not

hurt, defendant. 

 4. Appellant's concern over the possibility that Count II

(21 U.S.C. 952(a)) and Count III (21 U.S.C. 955) charge the

same crime and thus violate the proscription against double

jeopardy has been specifically addressed by us and found

unjustified in United States v. Franchi-Forlando, 838 F.2d 585,
 

589-591 (1st Cir. 1988). 5. Appellant claims that the court

 -6-

should have given an instruction on the possibility that his

actions were attributable to duress. There having been no such

request, we would need a much more persuasive record to fault the

judge for not including an instruction on his own initiative. 

 6. Appellant asserts error in sentencing by arguing that the

controlled substance involved was not cocaine base but cocaine,

or at least that there is uncertainty over this point. But it is

clear that the chemist identified it as cocaine base, without any

objection by defense counsel, and without any evidence to the

contrary. Indeed, the chemist was subjected to considerable

questioning regarding the distinctions between cocaine and

cocaine base.

 7. Appellant also argues for a downward departure because of

duress, and for an additional downward departure because of 

his asserted minimal role as a mere "mule." As an initial

matter, we note that we lack appellate jurisdiction to consider a

request for downward departure. See, e.g., United States v.
 

Amparo, 961 F.2d 288, 292 (1st Cir. 1992). This argument is
 

equally unavailing on the merits. What the court did was to

assume an amount (500 grams) well below what the chemist felt

certain was proven (1,547 grams); this established a base offense

level of 36. The court then granted a two-point reduction for

minor participation and another two-point reduction for accepting

responsibility. This produced a total offense level of 32,

which, for a defendant with a Criminal History Category of I,

called for a sentence within the range of 121 and 155 months.

 -7-

The court imposed a sentence of 121 months. It noted that the

mandatory minimum sentence was 10 years, or 120 months. Not only

is the support for further downward departures for duress and

minimal role nonexistent, therefore, but the mandatory minimum

floor is an impassable barrier to any further meaningful relief.

 The judgments of conviction are not attributable to errors

of either court or counsel, but must be 

 AFFIRMED. 

 -8-