989 F.2d 485
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES of AMERICA, Appellee,
v.
Juan Carlos VELEZ-POSADA, Defendant, Appellant.
 No. 92-1147.
 United States Court of Appeals,
First Circuit.
 March 9, 1993.
 
 Appeal from the United States District Court for the District of Puerto Rico
 Enrique Velez-Rodriguez for appellant.
 Juan Carlos Velez-Posada on brief pro se.
 Jose A. Quiles-Espinosa, Senior Litigation Counsel, with whom Daniel F. Lopez-Romo, United States Attorney, and Hernan Rios, Jr., Assistant United States Attorney, were on brief for appellee.
 D.Puerto Rico
 AFFIRMED.
 Before Selya, Circuit Judge, Coffin, Senior Circuit Judge, and Stahl, Circuit Judge.
 COFFIN, Senior Circuit Judge.
 
 
 1
 Defendant appeals from judgments of conviction for importing cocaine into the United States, 21 U.S.C. § 952(a), and for possessing a non-listed controlled substance on board an aircraft, 21 U.S.C. § 955. In addition to having read appellate counsel's brief and listened to oral argument, we also have read supplemental and reply briefs filed by appellant himself. Our conclusion, after giving due attention to all claims, is that we must affirm the judgments below.
 
 A. Sufficiency
 
 2
 We address first whether the evidence was sufficient to support the verdicts. Appellant testified to a series of events beginning with meetings at his father's bar in Medellin, Colombia, with two men who said that appellant owed them a favor and who wanted his passport number and photographs; continuing with a rendezvous at a street corner; a taxi ride to the airport and a flight to the island of San Andres; the receipt of two heavy suitcases supposedly containing clothes, as well as an air ticket (purchased by one person and reconfirmed by another) for travel from Nicaragua to Panama and then to Madrid, and $2,000 in cash; and subsequent travel to Panama for a three-day stay during which appellant called home a number of times but did not reveal his whereabouts, fearing threatened harm to his family if the truth were told. He also expressed his apprehension that unnamed persons were plotting to cut out one of his body organs.
 
 
 3
 Appellant was apprehended when his plane landed in San Juan. He had manifested nervousness and the customs officials' suspicions were aroused by the fact that his passport revealed exits from a country less identified with narcotics trafficking than Colombia. The two suitcases, bearing the claim numbers on his ticket, emitted a chemical odor; when samples of the suitcase material were tested, they revealed the presence of cocaine. Appellant, a 22-year-old student, whose earnings in connection with his father's bar approached $13 a month, was found with cash and records of expenditure totalling over $4,000.
 
 
 4
 The most important guide to note is that the jury was not obligated to believe appellant's testimony. It could disbelieve part or all of it. It also could conclude that the picture of a young man going without information as to what he was carrying, whom he had met, precisely where he was to go or whom he was to see upon arrival in Madrid, possessed of two excessively heavy suitcases, smelling of chemicals though purportedly carrying only clothes and a substantial amount of cash, was an unlikely one. As we said in a similar case involving an air passenger en route from Colombia to Madrid with cocaine-impregnated suitcases, "We cannot say that a reasonable juror could not reason in this way; or that such a juror must have a reasonable doubt about the conclusion." United States v. Mahecha-Onofre, 936 F.2d 623, 624 (1st Cir. 1991) (emphasis in original).
 
 B. Expert Testimony
 
 5
 Appellant also challenges the testimony of a U.S. Customs chemist, who had been qualified as an expert, and who testified about the tests he had made on material extracted from the suitcases. The grounds for challenge are that the testimony was misleading and confusing as to the presence and amount of controlled substance, and that the testing technique used by the witness was not trustworthy. The witness possessed a B.S. degree in chemistry from the University of Puerto Rico, had done three years of graduate work, and had spent five years in training activity while on the job. He had performed hundreds of tests a year, and had been qualified as an expert in a number of cases. He testified that he had had experience on only two prior occasions with drug-impregnated luggage but had through reading known how to conduct accurate testing.
 
 
 6
 At the end of cross examination as to qualifications, defendant's trial counsel said, "That's all, your Honor." Whereupon the court allowed examination to proceed. At the end of cross examination directed at the testing and at the method used in extrapolating the percentage of cocaine found in the samples to determine the amount present in the suitcases, counsel simply stated that she had no more questions. No objection having been made at any time to the qualifications of the witness, the method or the results of testing, appellant's heavy burden is to demonstrate plain error to the extent that manifest injustice will result if the judgment is allowed to stand. The record does not allow appellant to carry this burden successfully. It makes clear that although the method of concealing cocaine by impregnating suitcase liners with the drug may be novel, the technique of sampling, determining percentage of the drug in the samples, and extrapolating to ascertain the total amount of contraband in the two suitcases was not particularly novel or exotic. The specific half dozen tests to which the samples were subjected to determine the presence of cocaine base, such as ultraviolet spectrophotometric and gas chromatography tests, have been widely accepted. The method of determining the quantity of cocaine base contained in the two suitcases was explained carefully and at length, with no suggestion that the method was novel. Moreover, for purposes of sentencing, the court used an amount less than one third of that extrapolated by the witness.
 
 
 7
 In his pro se reply brief, appellant has cited a number of cases, such as Turpin v. Merrell Dow Pharmaceuticals, Inc., 959 F.2d 1349, 1352 (6th Cir. 1992) (involving the proof of causation of Bendectin birth defects), where the state of scientific studies, literature, and opinion is in such turmoil that courts bring to bear "close judicial analysis" of proposed expert testimony. There is nothing in this record to place this case in the company of those at the cutting edge of scientific inquiry.
 
 C. Other Issues
 
 8
 Appellant was allowed to file supplemental and reply briefs raising additional issues. None of these was preserved in the trial court. Our consideration of them is therefore limited; we review only to prevent a serious miscarriage of justice. See United States v. Newman, No. 91-2303, slip op. at 15 (1st Cir. Dec. 31, 1992).
 
 
 9
 1. The fact that the indictment charged an amount of contraband (10.9 kilograms of cocaine) greatly in excess of the amount proven (1,547 grams of cocaine base) is not a basis for reversal. The discrepancy between charge and proof did not mean that a different or an additional offense had been proven. The petit jury operated under proper instructions for weighing the evidence and in fact acquitted on Count I (charging possession of a large enough amount to indicate an intent to distribute), showing that it was not misled into thinking that over 10 kilograms of cocaine were involved.
 
 
 10
 2. The same observation disposes of appellant's contention that Count III could not stand without Count I.
 
 
 11
 3. The fact that the indictment charged that the defendant "knowingly and willfully" committed the offenses, whereas the statutes contained no such requirements, could only help, not hurt, defendant.
 
 
 12
 4. Appellant's concern over the possibility that Count II (21 U.S.C. § 952(a)) and Count III (21 U.S.C. § 955) charge the same crime and thus violate the proscription against double jeopardy has been specifically addressed by us and found unjustified in United States v. Franchi-Forlando, 838 F.2d 585, 589-591 (1st Cir. 1988). 5. Appellant claims that the court should have given an instruction on the possibility that his actions were attributable to duress. There having been no such request, we would need a much more persuasive record to fault the judge for not including an instruction on his own initiative.
 
 
 13
 6. Appellant asserts error in sentencing by arguing that the controlled substance involved was not cocaine base but cocaine, or at least that there is uncertainty over this point. But it is clear that the chemist identified it as cocaine base, without any objection by defense counsel, and without any evidence to the contrary. Indeed, the chemist was subjected to considerable questioning regarding the distinctions between cocaine and cocaine base.
 
 
 14
 7. Appellant also argues for a downward departure because of duress, and for an additional downward departure because of his asserted minimal role as a mere "mule." As an initial matter, we note that we lack appellate jurisdiction to consider a request for downward departure. See, e.g., United States v. Amparo, 961 F.2d 288, 292 (1st Cir. 1992). This argument is equally unavailing on the merits. What the court did was to assume an amount (500 grams) well below what the chemist felt certain was proven (1,547 grams); this established a base offense level of 36. The court then granted a two-point reduction for minor participation and another two-point reduction for accepting responsibility. This produced a total offense level of 32, which, for a defendant with a Criminal History Category of I, called for a sentence within the range of 121 and 155 months. The court imposed a sentence of 121 months. It noted that the mandatory minimum sentence was 10 years, or 120 months. Not only is the support for further downward departures for duress and minimal role nonexistent, therefore, but the mandatory minimum floor is an impassable barrier to any further meaningful relief.
 
 
 15
 The judgments of conviction are not attributable to errors of either court or counsel, but must be
 
 
 16
 AFFIRMED.