# United States Court of Appeals
## For the First Circuit

No. 10-1994

UNITED STATES OF AMERICA,

Appellee,

v.

LIZBETH VALERIO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Howard, Circuit Judges.

Peter J. Cyr, for appellant.
Vassili N. Thomadakis, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief for appellee.

April 17, 2012

**TORRUELLA**, **Circuit Judge**.  Defendant-Appellant Lizbeth Valerio ("Valerio") was convicted of three counts of mail fraud under 18 U.S.C. § 1341 and one count of aggravated identity theft under 18 U.S.C. § 1028A.  After the jury rendered its guilty verdict, Valerio filed two motions: (1) a motion for acquittal on the aggravated identity theft count due to insufficient evidence; and (2) a motion for a new trial on all counts due to ineffective assistance of counsel.  The district court denied both motions, and Valerio now appeals.  We find that there was sufficient evidence to sustain Valerio's conviction and that she was not prejudiced by her trial counsel's performance.  Accordingly, we affirm.

## I.  Background

### A.  Theft of Rosa Hernández's Identity

"Because this appeal involves a challenge to the sufficiency of the government's proof, we rehearse the facts in the light most favorable to the jury verdict, consistent with record support."  United States v. Dwinells, 508 F.3d 63, 65 (1st Cir. 2007) (citing United States v. Carroll, 105 F.3d 740, 742 (1st Cir. 1997)).

Valerio is a native and citizen of Costa Rica.  On March 20, 1991, Valerio entered the United States illegally and made her way to New Jersey.  There, her companion, Carlos Gómez ("Gómez"), paid $500 to obtain a birth certificate and Social Security card in the name of Rosa Hernández ("Hernández").

Hernández is a real person who resides in Puerto Rico. The birth certificate listed the birthplace for Hernández as Adjuntas, Puerto Rico, included the names and birthplaces of Hernández's parents (also Adjuntas, Puerto Rico), and had an official stamp from the municipality.

Valerio eventually settled in Massachusetts. Over the course of more than a decade, from 1995 until 2007, Valerio used Hernández's identity to hold a variety of jobs. Valerio also used the name "Rosa Hernández" to pay taxes, open numerous lines of credit, purchase two cars, and take out a loan to purchase a home. Furthermore, Valerio used Hernández's identity to apply for a driver's license in Massachusetts. The license application form required a Social Security number ("SSN") and stated that the number provided would be verified with the Social Security Administration ("SSA"). Valerio provided Hernández's SSN and opted to use that same number as her driver's license number, declining the option of using a random number instead.

At the same time she was using Hernández's identity, Valerio applied for various welfare benefits for herself and her family, including food stamps and housing assistance, under her real name. Each of the agencies to which Valerio applied required her to truthfully disclose all of her income and assets. However, Valerio withheld information regarding income she earned and assets she held under Hernández's name. In addition, Valerio used

Hernández's name to give credence to information that she was providing to government agencies; she mailed letters purporting to be from Hernández to state and federal agencies stating that Hernández was Valerio's "supervisor" and vouching for Valerio's employment and volunteer activities.

At various times while Valerio was using Hernández's identity, she received credit reports for "Rosa Hernández" from credit reporting agencies. These reports listed various addresses for "Rosa Hernández," including Valerio's address in Massachusetts and other addresses in Massachusetts at which Valerio had never lived. The reports also listed an address for "Rosa Hernández" in Adjuntas, Puerto Rico. In response to reports listing addresses other than her own, Valerio submitted correction forms stating she had never lived at those addresses. In addition, Valerio received a credit report listing Hernández's outstanding student loan debt at Pontificia Universidad Católica ("Pontificia") in Puerto Rico. Valerio submitted a correction form stating that she had never studied at Pontificia, and the reporting agency deleted that debt from her report.

## B. Valerio's Apprehension

In 2006, when the real Rosa Hernández tried to purchase a car, she learned that someone in Massachusetts had numerous lines of credit under her name. Hernández filed a police report with the Chelsea, Massachusetts Police Department in 2007. The police tied

the "Rosa Hernández" name being used in Chelsea to a subsidized housing unit rented by Valerio. The police went to Valerio's home and asked her whether she knew Hernández. Valerio replied that Hernández was a friend of hers. The police apprehended Valerio, searched her, and later searched her apartment. The police found numerous documents relating to both Valerio's true identity and her assumed "Rosa Hernández" identity, including the Social Security card, birth certificate, and credit reports. These documents were organized by identity into two separate drawers, with one drawer dedicated to Valerio's real identity and the other dedicated to the "Rosa Hernández" identity.

## C. Pretrial Proceedings and Trial

Valerio was represented at trial by Robert F. Collins ("Collins"). Collins did not file certain pretrial motions that Valerio claims he should have filed. Collins did not file any written pretrial motions to suppress Valerio's statement to the police that Hernández was her friend. Collins also did not file a motion to sever the aggravated identity theft count from the mail fraud counts. Moreover, Collins did not file witness or exhibit lists, and he failed to use the court's electronic filing system for documents he did file.

During his opening statement at trial, Collins correctly informed the jury that under Flores-Figueroa v. United States, 129 S. Ct. 1886, 1888 (2009), the government would have to prove that

Valerio knew that the identification documents she was using belonged to an actual person in order to convict Valerio of aggravated identity theft. During its case, the government introduced evidence of Valerio's use of Hernández's identity through various witnesses, including the officer who arrested Valerio and Hernández herself. Collins cross-examined Hernández, emphasizing that she and Valerio had never met. The government also introduced evidence of Valerio's false statements in her written applications for various types of government assistance.

At the close of the government's case, Collins moved on Valerio's behalf for a judgment of acquittal under Fed. R. Crim. P. 29 on the aggravated identity theft charge, arguing that the government failed to carry its burden under Flores-Figueroa of proving that Valerio knew that Hernández was an actual person. The judge denied this motion, and Collins proceeded to present the defense's case. Valerio testified that she had never met Hernández, did not know she was a real person, and had no way of knowing whether the "Rosa Hernández" birth certificate or Social Security card was authentic.

Under cross-examination, Valerio admitted that she possessed the birth certificate and numerous other documents linking "Rosa Hernández" to Adjuntas, Puerto Rico. Valerio also admitted that she had engaged in the mailings which were the subject of the mail fraud counts. At one point during Valerio's

-6-

cross-examination, Collins allegedly closed his eyes and appeared to fall asleep. The judge took note of this and adjourned the jury, then questioned Collins. Collins maintained that he was awake the entire time.

Prior to trial, Collins had orally moved to dismiss the charges against Valerio based on a theory of selective prosecution, but the court denied the motion for lack of factual support. Collins repeatedly tried to raise the selective prosecution defense during trial, and was reprimanded for it by the judge on many occasions. Collins also raised a jury nullification defense a number of times and was similarly reprimanded for doing so.

After Valerio testified, Collins renewed the motion for a judgment of acquittal based on the government's purported failure to prove the knowledge required under Flores-Figueroa. The court denied the motion. In his closing argument to the jury, Collins argued that the government failed to carry its burden of proving beyond a reasonable doubt that Valerio knew the identification she was using belonged to another. The jury found Valerio guilty on the three mail-fraud counts and the one aggravated identity theft count.

## D. Post-Trial Proceedings

After the trial, but prior to sentencing, Valerio successfully moved to have new counsel appointed for her. Valerio's new counsel again moved for judgment of acquittal under

Fed. R. Crim. P. 29 on the aggravated identity theft count. Counsel also moved for a new trial under Fed. R. Crim. P. 33 on all counts. The district court denied both motions.

The district court denied the motion for acquittal because the court found the evidence sufficient for the jury to convict Valerio of aggravated identity theft. In particular, the court noted the following evidence: (1) Valerio had a copy of Hernández's Social Security card; (2) she had a copy of Hernández's birth certificate; (3) the birth certificate indicated that Hernández was born in Adjuntas; (4) the credit reports listed Hernández's address in Adjuntas, the name of a university Hernández attended (Pontificia), and Hernández's student loan; (5) the student loan appeared in the liability section of a mortgage application Valerio filed in Hernández's name; and (6) Valerio used Hernández's SSN to get a driver's license. The court highlighted Valerio's possession of Hernández's Social Security card and birth certificate and noted that Valerio's "willingness to subject the Social Security card repeatedly to government scrutiny" constituted evidence that she knew the identity belonged to a real person.

As to the motion for a new trial, Valerio put forth five different theories of ineffective assistance, each of which the district court rejected. First, as to Valerio's assertion that Collins had not presented an adequate defense on the knowledge issue, the court held that Collins's performance was not

unreasonable and that there was no reasonable probability of a different outcome assuming Collins had performed better. Second, the court rejected the argument that Collins was "inattentive" in failing to suppress evidence of Valerio's illegal entry into the U.S., noting that any motion to exclude that evidence would have been futile. For similar reasons, the court rejected Valerio's third argument, that Collins should have objected to the introduction of the amount of loss stemming from Valerio's fraud.

Fourth, the district court rejected Valerio's argument that she was prejudiced by Collins's failure to heed the court's admonitions regarding his pursuit of the selective prosecution and jury nullification defenses. The court found that even if Collins had acted unreasonably, the evidence against Valerio was strong enough that there was no prejudice. Finally, the court rejected the argument that Collins should have suppressed Valerio's statement to the police that Hernández was her friend. The court held that any such motion would have been futile, and further held that even if such a motion could have succeeded, the strength of the government's remaining evidence was overwhelming.

Valerio now appeals the district court's denial of her motions for acquittal and for a new trial.

## II.  Discussion

## A.  Denial of Rule 29 Motion

We review a district court's denial of a Rule 29 motion for judgment of acquittal de novo.  United States v. Lipscomb, 539 F.3d 32, 40 (1st Cir. 2008).  We must uphold the denial if, "after assaying all the evidence in the light most amiable to the government, and taking all reasonable inferences in its favor," we determine that "a rational factfinder could find, beyond a reasonable doubt, that the prosecution successfully proved the essential elements of the crime."  United States v. Hernández, 146 F.3d 30, 32 (1st Cir. 1998) (quoting United States v. O'Brien, 14 F.3d 703, 706 (1st Cir. 1994)) (internal quotation marks omitted). We take into account all evidence, both direct and circumstantial, and resolve evidentiary conflicts and credibility disputes in favor of the jury's verdict.  See id.; see also United States v. Manor, 633 F.3d 11, 13 (1st Cir. 2011).

Under 18 U.S.C. § 1028A(a)(1), a person is guilty of aggravated identity theft if, in relation to any felony listed in § 1028A(c), she "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." The list of offenses in § 1028A(c) includes mail fraud under 18 U.S.C. § 1341.  In Flores-Figueroa, the Supreme Court held that to satisfy the knowledge element of § 1028A(a)(1), the government must prove "that the defendant knew that the means of identification at

issue belonged to another person." 129 S. Ct. at 1894. This Court had previously reached the same conclusion in United States v. Godin, 534 F.3d 51, 61 (1st Cir. 2008) (finding ambiguity regarding whether Congress intended the "knowingly" mens rea requirement of § 1028A to extend to "of another person" and applying rule of lenity to hold that it does).

Valerio contends that there was no direct evidence that she knew Rosa Hernández was a real person. She notes that there is no direct evidence that she knew anything about the origin of the documents Gómez procured for her. She also points out that both she and Hernández testified that neither of them knew the other. However, when a crime has a knowledge element, "it is well-established that knowledge may be proven by circumstantial evidence alone; indeed, it frequently cannot be proven in any other way." United States v. Agosto-Vega, 617 F.3d 541, 549 (1st Cir. 2010) (quoting United States v. García, 521 F.3d 898, 901 (8th Cir. 2008)) (alterations and internal quotation marks omitted). We find that there is sufficient circumstantial evidence that Valerio knew that Rosa Hernández was a real person to justify a conviction.

In United States v. Martins, we upheld a defendant's conviction for aggravated identity theft where the defendant possessed the victim's Social Security card and knew "specific details of [the victim's] life." 325 F. App'x 7, 8 (1st Cir. 2009). Here, Hernández's birth certificate -- which Valerio

-11-

possessed -- showed Hernández's place of birth as Adjuntas, showed Hernández's parents' names, and showed Hernández's parents' place of birth (which was also Adjuntas). Moreover, Valerio also had credit reports for "Rosa Hernández" listing an address in Adjuntas. The combination of the birth certificate and the credit reports was sufficient to allow a rational finder of fact to conclude that Valerio knew that the "Rosa Hernández" whose birth certificate she possessed was in fact a real person residing in Adjuntas, Puerto Rico.

In addition, as the district court noted, Valerio repeatedly subjected the "Rosa Hernández" identity to government scrutiny. Valerio used Hernández's SSN to apply for a driver's license in Massachusetts, knowing that the number would be verified with the SSA. Valerio also used Hernández's SSN on forms she submitted to the Internal Revenue Service and to the Massachusetts Department of Revenue. A "willingness to subject [a] social security card repeatedly to government scrutiny" is evidence that allows a reasonable jury to find that a defendant knew that a stolen identity belonged to a real person. United States v. Holmes, 595 F.3d 1255, 1258 (11th Cir. 2010); see also United States v. Gómez-Castro, 605 F.3d 1245, 1249 (11th Cir. 2010) (upholding aggravated identity theft conviction where defendant "repeatedly and successfully tested the authenticity of the [stolen] birth certificate and social security card" by obtaining

-12-

driver's license, credit cards, and passport, and where defendant used passport with victim's identity to enter the United States).

Valerio contends that this case is similar to Godin, in which this Court overturned an aggravated identity theft conviction. In Godin, the defendant opened a bank account using a SSN she created by altering digits of her own SSN; this number turned out to belong to another person. 534 F.3d at 54, 62. However, the defendant in Godin did not possess any documents suggesting that the SSN she used might belong to a real person. Here, in contrast, Valerio possessed documents suggesting that Hernández was a real person, including Hernández's Social Security card, birth certificate, and credit reports listing Hernández's address in Adjuntas, Puerto Rico. Moreover, in this case, Valerio did not simply make up a SSN herself; rather, she obtained a SSN from an actual Social Security card with another person's name.[1]

---

[1] Valerio also likens her case to United States v. Grajeda-Gutiérrez, 372 F. App'x 890 (10th Cir. 2010). In that case, the defendant used the victim's SSN, a fabricated resident alien card bearing the victim's name, and a driver's license with the victim's name to obtain employment at Walmart. Id. at 891. The Tenth Circuit overturned the defendant's aggravated identity theft conviction. Id. at 893. However, in Grajeda-Gutiérrez, there was no evidence that the defendant possessed additional documents -- such as the credit reports in this case -- that would suggest that the identity the defendant was using belonged to a real person. Moreover, in Grajeda-Gutiérrez, the defendant had been convicted prior to the Supreme Court's decision in Flores-Figueroa, and on appeal the government conceded that it did not present enough evidence to the jury to satisfy the newly-applicable knowledge requirement. Id. at 893. Here, by contrast, the parties and the trial court were aware of Flores-Figueroa, and the government contends that it did present enough evidence to convince

-13-

Valerio also contends that the evidence supports an inference that she did <u>not</u> know that "Rosa Hernández" was a real person. Valerio points out that none of the government agencies to which she submitted Hernández's SSN ever informed her that there was a "Rosa Hernández" living in Adjuntas, Puerto Rico. Valerio also argues that the credit reports listing Hernández's address in Adjuntas would not necessarily have caused Valerio to conclude that Rosa Hernández was a real person living in Adjuntas. Valerio points to published studies showing that credit reports frequently contain errors, and she further notes that one of the credit reporting agencies removed the reference to Pontificia from her report after she submitted a correction form.

However, when this Court reviews a jury verdict for sufficiency of evidence, "it matters not whether [the defendant] can raise a plausible theory of innocence: if the record as a whole justifies a judgment of conviction, it need not rule out other hypotheses more congenial to a finding of innocence." <u>Manor</u>, 633 F.3d at 14 (quoting <u>United States</u> v. <u>Gifford</u>, 17 F.3d 462, 467 (1st Cir. 1994)) (internal quotation marks omitted). Here, even if one plausible inference from the evidence was that Valerio did not know that Hernández was a real person, an at least equally plausible inference was that Valerio did in fact possess that knowledge. The jury was entitled to choose the latter inference, and it is not

a jury that Valerio knew that Rosa Hernández was a real person.

-14-

this Court's place to question the jury's choice.  See Dwinells, 508 F.3d at 74; United States v. Guerrero-Guerrero, 776 F.2d 1071, 1075 (1st Cir. 1985) (explaining that jurors are "free to choose among varying interpretations of the evidence, as long as the interpretation they choose is reasonable").

We find that based on the evidence presented, a reasonable jury could have concluded beyond a reasonable doubt that Valerio knew that the "Rosa Hernández" identity she was using belonged to an actual person.  We therefore affirm the district court's denial of Valerio's motion for judgment of acquittal.

## B.  Denial of Motion for New Trial

Valerio appeals the district court's denial of her motion for a new trial under Fed. R. Crim. P. 33.  Valerio argues that the district court should have granted her motion because Collins rendered ineffective assistance as trial counsel.  Specifically, Valerio argues that Collins's performance was ineffective for four reasons: (1) Collins did not file a motion to suppress Valerio's statement to the police that Hernández was her friend; (2) Collins failed to present an adequate defense against the government's proof of the Flores-Figueroa knowledge element; (3) Collins pursued selective prosecution and jury nullification arguments at the expense of competent argument on the Flores-Figueroa knowledge

-15-

element; and (4) Collins fell asleep at one point during the trial.[2]

This Court reviews the denial of a Rule 33 motion for "manifest abuse of discretion." United States v. Josleyn, 206 F.3d 144, 151 (1st Cir. 2000). Where a defendant claims ineffective assistance of counsel, she must demonstrate both: (1) that "counsel's performance was deficient," meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). "[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." Id. at 698. The standard of review applied "depends, in the last analysis, on the extent to which a particular question is fact-dominated or law-dominated." Dugas v. Coplan, 506 F.3d 1, 8 (1st Cir. 2007) (quoting Pike v. Guarino, 492 F.3d 61, 68 (1st Cir. 2007)) (internal quotation marks omitted).

"Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. The reviewing court "must indulge a strong presumption that counsel's conduct

---

[2] Valerio also argues that she was prejudiced by Collins's failure to sever the aggravated identity theft count from the mail fraud counts. However, she did not raise this argument before the district court; therefore, this argument is waived. See, e.g., United States v. Wallace, 573 F.3d 82, 96 n.13 (1st Cir. 2009) ("Arguments raised for the first time on appeal are considered waived.").

-16-

falls within the wide range of reasonable professional assistance."
Id.  "It is only where, given the facts known at the time,
counsel's choice was so patently unreasonable that no competent
attorney would have made it, that the ineffective assistance prong
is satisfied."  Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006)
(internal quotation marks omitted).

        With regard to the prejudice prong of Strickland, "[t]he
defendant must show that there is a reasonable probability that,
but for counsel's unprofessional errors, the result of the
proceeding would have been different.  A reasonable probability is
a probability sufficient to undermine confidence in the outcome."
Strickland, 466 U.S. at 694.  The reviewing court "must consider
the totality of the evidence before the judge or jury."  Id. at
695.  "[A] verdict or conclusion only weakly supported by the
record is more likely to have been affected by errors than one with
overwhelming record support."  Id. at 696.

        Here, Valerio first contends that she was prejudiced by
Collins's failure to suppress her statement to the police that
Hernández was her friend.  Yet even assuming arguendo that there
was any valid basis for suppressing this statement, there is no
"reasonable probability" that "the result of the proceeding would
have been different" had the statement been suppressed.  See id. at
694.  The government used Valerio's statement against her to show
her guilt on the mail fraud counts.  However, even without this

-17-

statement, the evidence against her on these counts was overwhelming.

The government introduced evidence showing that Valerio lied about her income and assets on various forms she submitted to government agencies in order to get benefits. In addition, Valerio admitted at trial that she intentionally failed to report all of her income and assets despite knowing that she was required to do so. Furthermore, she admitted that she mailed certain letters under the name "Rosa Hernández" to various government agencies with the intent to deceive those agencies. Given this evidence, Valerio suffered no prejudice from Collins's supposedly erroneous failure to move to suppress the statement to the police. See United States v. Van Helden, 920 F.2d 99, 103 (1st Cir. 1990) (rejecting ineffective assistance of counsel claim based on failure to suppress an admission where evidence other than admission established defendant's guilt beyond a reasonable doubt).

Second, Valerio contends that Collins failed to present an adequate defense to the government's showing that she knew that Hernández was a real person. Valerio concedes that Collins correctly explained the knowledge requirement of Flores-Figueroa to the jury and that Collins elicited testimony from Valerio that she did not know that Hernández was a real person. However, Valerio contends that Collins did not adequately develop his argument on the knowledge issue because he failed to employ certain tactics

that he should have employed.  For example, Valerio argues that Collins should have asked her what the credit reports, and the fact that some credit reporting agencies complied with her requests for correction, led her to believe.  She also contends that Collins should have presented witnesses to testify about the prevalence of errors in credit reporting statements.  In addition, she argues that Collins should have had someone from the SSA testify to the fact that there are millions of unassigned SSNs.

We find nothing inadequate about Collins's performance regarding the knowledge issue.  Collins correctly informed the jury during opening arguments that the government had the burden of proving that Valerio knew that Rosa Hernández was a real person. Collins asked a number of questions during his cross-examination of Hernández and his direct examination of Valerio designed to press the point that Valerio and Hernández had never met each other. Furthermore, Collins elicited testimony from Valerio that she herself did not purchase Hernández's birth certificate and Social Security card and that she did not know whether those documents were genuine.  Finally, Collins argued to the jury at length during his closing arguments that the government had failed to meet its burden of showing knowledge.  The fact that Collins's defense was ultimately unsuccessful does not mean that his performance was unconstitutionally deficient.  See, e.g., Matthews v. Rakiey, 54 F.3d 908, 917 (1st Cir. 1995) (that a particular defense theory

"was not ultimately a winning strategy is of no moment in assessing its reasonableness at the time").

Moreover, there is no reasonable probability that any of the additional tactics that Valerio faults Collins for not using would have affected the outcome. Valerio might have testified that the credit reports "led her to believe" that Rosa Hernández was not a real person; however, it is unlikely that such testimony would have swung the tide in her favor, given how many different documents Valerio had from different sources indicating that Hernández was a real person. Likewise, that credit reports often contain errors does not diminish the probative weight of the fact that in this case, the credit reports and the birth certificate both connected Hernández with Adjuntas, Puerto Rico. The fact that there are many unassigned SSNs is likewise irrelevant, since in this case there was ample evidence that Valerio knew that the SSN she was using was in fact assigned to another person. Valerio's arguments simply amount to "Monday morning quarterbacking of trial tactics," which is insufficient to sustain an ineffective assistance of counsel claim. United States v. Thomann, 609 F.2d 560, 566 (1st Cir. 1979).

Third, Valerio argues that Collins pursued jury nullification and selective prosecution theories at the expense of his defense on the knowledge front. However, as discussed above, Collins did present an adequate defense on the knowledge issue.

-20-

Perhaps Collins could have spent more time on the knowledge issue had he not pursued his alternate theories (which were themselves not unreasonable defense choices). However, as previously noted, none of the additional tactics that Valerio says Collins should have employed regarding the knowledge issue would have influenced the outcome of the case. Thus, we find that Valerio suffered no prejudice from Collins's choice to spend time pursuing his alternate theories.[3]

Finally, Valerio argues that she was prejudiced because Collins allegedly fell asleep. However, upon seeing Collins close his eyes, the district court immediately held a conference with counsel and concluded that Collins had not fallen asleep. This was a factual finding by the district court that we can overturn only if it was clearly erroneous. Cf. Coplan, 506 F.3d at 8 (district court's factual findings on ineffective assistance of counsel claim raised in a habeas corpus petition reviewed for clear error). We have no basis for concluding that the district court was incorrect.

Since Valerio has not shown that she was in any way prejudiced by Collins's performance as trial counsel, we affirm the district court's denial of Valerio's motion for a new trial.

---

[3] The district court admonished Collins for continuing to pursue these theories after the court instructed him not to. However, the district court found that this did not prejudice Valerio, and Valerio does not challenge this finding on appeal.

### III. Conclusion

For the foregoing reasons, we affirm the district court's denial of Valerio's motion for judgment of acquittal and of her motion for a new trial.

**Affirmed**.