**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Salim CISSE, Defendant–Appellant.**

No. 03–3616.

United States Court of Appeals,
Seventh Circuit.

Argued June 15, 2004.

Decided June 24, 2004.

James M. Warden, Office of the United States Attorney, Indianapolis, IN, for Plaintiff–Appellee.

Linda M. Wagoner, Indianapolis, IN, for Defendant–Appellant.

Before POSNER, DIANE P. WOOD, and WILLIAMS, Circuit Judges.

## ORDER

As part of a bank fraud scheme, Salim Cisse and an accomplice established bank accounts using fictitious names and social security numbers. As it happened, one of those numbers belonged to an actual person—a toddler named Jacob Bowman. Because of this coincidence, Cisse received a two-level upward adjustment for identity theft under U.S.S.G. § 2B1.1(b)(9)(C)(i) (2002). He now argues that this adjustment should not have been applied to him because the number was not actually stolen and only by chance corresponded to a real person. This is a question concerning the district court's interpretation of the Sentencing Guidelines, which we review *de novo*. *United States v. King*, 338 F.3d 794, 799 (7th Cir.2003).

The facts are not disputed. Cisse and his accomplice, Mohammed Fadiga, laundered more than $200,000 worth of counterfeit checks by transferring the money through various bank accounts, some of which had been opened using pseudonyms and fake social security numbers. Fadiga had opened one such account in 2001 at National City Bank in Indianapolis using the name "Osman Sesay" and a social security number that differed by only one digit from Cisse's own social security number (or, more precisely, from a number Cisse had obtained in 1999 under the alias "Assalaam Cisse").

Cisse ultimately pleaded guilty to one count of bank fraud, 18 U.S.C. § 1344. Before sentencing, it was learned that the social security number that was used to open the account for "Osman Sesay" actually belonged to Jacob Bowman, a child born in Indianapolis in 1999. There was no evidence that Fadiga or Cisse knew of this child, that they obtained the number from any document relating to him, or that they even knew the number belonged to an actual person.

Nevertheless, the district court concluded that the use of Bowman's number (attributable to Cisse under § 1B1.3(a)(1)(B) as reasonably foreseeable relevant conduct) triggered an enhancement for identity theft under § 2B1.1(b)(9)(C)(i), which mandates a two-level increase for offenses involving "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification." A cross-reference defines "means of identification" as "any name or number that may be used, alone or in conjunction with any other information, to

identify a specific individual," such as a "social security number" or a "unique electronic identification number." 18 U.S.C. § 1028(d)(7). The court reasoned that Bowman's social security number was a means of identification used without authorization to obtain another means of identification—a bank account with a unique identification number—and so applied the two-level adjustment to Cisse.

Cisse now challenges that conclusion. He concedes that using someone else's social security number to open a bank account is covered by § 2B1.1(b)(9)(C)(i), as suggested by application note 7(C)(ii)(I) (enhancement applies when "[a] defendant obtains an individual's name and social security number from a source ... and obtains a bank loan in that individual's name"). He argues, however, that his situation is distinguishable from this example, because neither he nor Fadiga "obtained" Jacob Bowman's social security number from any source, nor did they open the bank account in Bowman's name. He also notes that the Guidelines specify that the "means of identification" must "be of an actual (*i.e.* not fictitious) individual," § 2B1.1(b)(9)(C)(i) cmt. n. 7(A), and "Osman Sesay" was a fictitious individual. He thus insists that to apply the identity theft enhancement in this case would be contrary to the Guidelines' intent.

Section 2B1.1(b)(9)(C)(i) was added to the Guidelines in November 2000, and we have found only one published case discussing its application. In *United States v. Williams*, 355 F.3d 893 (6th Cir.2003), the defendants applied for bank loans under their own names, but with false social security numbers, employment histories, and salary information they had purchased from providers of false identifying information. The social security numbers belonged to actual individuals, but the opinion does not indicate how the sellers obtained those numbers. The defendants in that case argued that § 2B1.1(b)(9)(C)(i) did not apply to them because although they used other people's social security numbers to apply for the loans, they also used their own names, and therefore did not steal anybody's identity. The Sixth Circuit rejected that argument, noting that "the definition of 'means of identification' ... does not require that a name and social security number be used together," and that the enhancement applies whether such a name or number is "used, alone or in conjunction with any other information, to identify a specific individual." *Williams*, 355 F.3d at 900 (emphasis, citation, and internal quotation marks omitted).

This case is similar, except that here the social security number was clearly not obtained from the actual individual to whom it was assigned. Cisse argues that the difference is crucial. In each of the examples in the application notes, the defendant obtains the identifying information "from a source," such as "a piece of mail taken from the individual's mailbox" or "a driver's license in a stolen wallet." § 2B1.1(b)(9)(C)(i) cmt. n. 7(C)(ii). Information invented out of whole cloth, in contrast, qualifies as fictitious, and thus does not trigger the enhancement. *Id.* at n. 7(A).

We nevertheless conclude that the enhancement was properly applied in this case. A made-up social security number is different than a made-up name, because the number alone is sufficient to identify the associated individual uniquely and unambiguously. *See Bowen v. Roy*, 476 U.S. 693, 710, 106 S.Ct. 2147, 90 L.Ed.2d 735 (1986) (observing that "Social Security numbers are unique numerical identifiers"). A fictitious name, in contrast, even if it happens to be held by a real person, will not be uniquely associated with that person, and its use will therefore be less

likely to cause the sort of harm anticipated by the identity-theft enhancement (particularly "harm to a victim's reputation" and "inconvenience," U.S.S.G. app. C, amend. 596, "Reason for Amendment" ¶ 9). Furthermore, although Cisse argues that in this case "there was no harm to the reputation or credit rating of the victim," he does not suggest that such harm is necessarily prevented by the use of an entirely different name ("Osman Sesay") in conjunction with the victim's number. *Cf. DiGianni v. Stern's*, 26 F.3d 346, 347 (2d Cir.1994) (describing damage to victim's credit rating caused by the unauthorized use of her social security number with different names and addresses).

It is not unforeseeable or even unlikely that a made-up social security number will turn out to belong to a real person. And the use of such a number fits comfortably within a straightforward reading of the § 2B1.1(b)(9)(C)(1). We therefore AFFIRM the district court's application of the enhancement.