# United States Court of Appeals
## For the First Circuit

---

No. 07-2332

UNITED STATES,

Appellee,

v.

CORI A. GODIN,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby,  U.S. District Judge]

---

Before

Lynch, Chief Judge,
Torruella, Circuit Judge,
and Tashima,[*] Senior Circuit Judge.

---

Eric A. Vos, Assistant Federal Defender, with whom David Beneman, Federal Defender, was on brief for appellant.
    Margaret D. McGaughey, Appellate Chief, with whom Paula D. Silsby, United States Attorney, was on brief for appellee.

---

July 18, 2008

---

[*]    Of the Ninth Circuit, sitting by designation.

**TASHIMA**, <u>Senior Circuit Judge</u>.  Defendant-Appellant Cori A. Godin challenges her conviction for aggravated identity theft under 18 U.S.C. § 1028A(a)(1).  The statute adds a mandatory two-year term of imprisonment to that otherwise provided for certain enumerated felonies if, "during and in relation to" the felony, the perpetrator "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person."  18 U.S.C. § 1028A(a)(1).  The question before this court is how far the "knowingly" <u>mens</u> <u>rea</u> requirement extends.  Must the defendant know that the means of identification belongs to another person?  We conclude that the statute is ambiguous and that the legislative history does not clearly reveal congressional intent.  Applying the rule of lenity, as we must, we hold that the "knowingly" <u>mens</u> <u>rea</u> requirement extends to "of another person."  In other words, to obtain a conviction under § 1028A(a)(1), the government must prove that the defendant knew that the means of identification transferred, possessed, or used during the commission of an enumerated felony belonged to another person.  The government did not do so here.  Accordingly, we reverse Godin's conviction.[1]

## I.  Background

In 2006, Godin defrauded eight banks and credit unions (collectively, the "banks").  She opened accounts using fabricated social security numbers, closed some accounts, and then deposited

---

[1]     We have jurisdiction pursuant to 28 U.S.C. § 1291.

checks drawn on the closed accounts into the still open accounts. Godin then withdrew funds from the falsely inflated accounts. In this manner, Godin defrauded the banks of approximately $40,000.

Godin fabricated seven different social security numbers by altering the fourth and fifth digits of her own social security number. Godin's social security number is 004-82-XXXX.[2] Of the seven fabricated numbers, only one, number 004-44-XXXX, belonged to another person. Godin opened an account at Bank of America with the fabricated 004-44-XXXX number but provided the bank with her correct name, address, date of birth, driver's license number, and telephone number.

The government charged Godin in a seventeen-count indictment: six counts of bank fraud in violation of 18 U.S.C. § 1344, ten counts of social security fraud in violation of 42 U.S.C. § 408(a)(7)(B), and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). In the aggravated identity theft count, Godin was charged with knowingly using social security number 004-44-XXXX during and in relation to one of the bank fraud counts (Count 4) and one of the social security fraud counts (Count 15).

Godin moved to dismiss Count 17, the aggravated identity theft count, arguing that the government had to prove that she knew

---

[2]    We redact the last four digits of each social security number for the sake of privacy.

-3-

that the 004-44-XXXX social security number belonged to another person. The District Court denied the motion to dismiss, but declined to reach the mens rea issue. United States v. Godin (Godin I), 476 F. Supp. 2d 1 (D. Me. 2007). Noting that what Godin knew about the number remained a question of fact,[3] the District Court "decline[d] to make an abstract decision on an issue that ultimately may not reflect the actual facts." Id. at 3.

Thereafter, Godin pleaded guilty to the sixteen bank and social security fraud counts. Godin proceeded to trial only on Count 17, the aggravated identity theft count. At trial, Godin stipulated that she committed bank and social security fraud and that she knew that the social security numbers she used in relation to those felonies were not her own.

The government called two witnesses. The first was employed by Bank of America and testified that Godin used number 004-44-XXXX to open an account but that she gave the bank her correct name, address, phone number, driver's license number, and date of birth. The government then called a Special Agent for the Social Security Administration ("Agent"). The Agent testified that by searching a secure and password-protected Social Security Administration database, he determined that social security number

---

[3] In opposing the motion to dismiss, the government argued "that it [was] simply incredible for the Defendant to claim that there was no way she could have known at least one of these numbers . . . was assigned to another individual." Godin I, 476 F. Supp. 2d at 3.

-4-

004-44-XXXX was assigned to a man who resided in Maine.[4] The Agent also testified that he could not tell by looking at the number that it belonged to another person because there are millions of unassigned numbers. Godin did not dispute any of this evidence but put her true social security number, 004-82-XXXX, into evidence.

After the government's case in chief, Godin moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. She argued that the evidence was insufficient to support a verdict because the government presented no evidence to show that she knew the false number belonged to someone else. The District Court denied the motion. The District Court gave two reasons for its decision. First, the scienter issue remained unresolved. Second, the District Court believed that the jury could find that Godin knew the number belonged to someone else.

Both parties debated the scienter requirement at a jury charge conference. While acknowledging that it was "a close issue," the District Court instructed the jury as follows:

> To convict Cori Godin of this offense, the government must prove each of the following elements beyond a reasonable doubt:
> _First_, Cori Godin committed bank fraud and / or social security fraud felony violations. The parties stipulate that she did so.
> _Second_, during and in relation to one or both of those other felony violations, Cori Godin knowingly used a means of identification without lawful authority.
> _Third_, that means of identification belonged to another person.

---

[4] The record does not reveal the individual's name.

-5-

. . .

> "Knowingly" means that the act was done voluntarily and intentionally and not because of mistake or accident. The government must prove that Cori Godin knew that she did not have lawful authority to use the means of identification in question. The government is not required to prove that she knew the means of identification actually belonged to another person.

United States v. Godin (Godin II), 489 F. Supp. 2d 118, 119-20 (D. Me. 2007).

In explaining its decision, the District Court first noted that the language of § 1028A(a)(1) was "not strongly persuasive in either direction," but permitted the District Court's reading. Id. at 120. Second, the weight of case law at that time favored a narrow scienter requirement. Id. Third, "knowingly" had to extend to "means of identification" because the statute requires that the defendant know that the means of identification is fraudulent. Id. Finally, the purpose of the statue, punishing "identity theft," supported stopping the scienter requirement at "means of identification" and not extending it to "of another person" because the person whose number Godin used "was a victim of identity theft, whether Godin knew that she was stealing his identity or not." Id. at 121.

The jury returned a guilty verdict. Godin timely appeals, contending that the court charged the jury in error and that the evidence was insufficient to convict her of aggravated identity theft under § 1028A(a)(1).

## II.  Scienter Requirement

The circuits are divided on the issue of whether the "knowingly" scienter requirement in § 1028A(a)(1) extends to "of another person."  The Fourth, Eighth, and Eleventh Circuits have concluded that it does not.  United States v. Mendoza-Gonzalez, 520 F.3d 912, 915 (8th Cir. 2008); United States v. Hurtado, 508 F.3d 603, 607 (11th Cir. 2007) cert. denied, ___ S. Ct. ___, 2008 WL 488011 (June 9, 2008); United States v. Montejo, 442 F.3d 213, 214 (4th Cir.), cert. denied, 127 S. Ct. 366 (2006).  The D.C. Circuit recently concluded, however, that it does.  United States v. Villanueva-Sotelo, 515 F.3d 1234, 1236 (D.C. Cir. 2008).  We review de novo "alleged jury instruction errors involving the interpretation of the elements of a statutory offense."  United States v. Soto-Beniquez, 356 F.3d 1, 44-45 (1st Cir. 2003).

Our interpretive task begins with the statute's text.  United States v. Jimenez, 507 F.3d 13, 19 (1st Cir. 2007).  We look to the plain meaning of the words in "'the broader context of the statute as a whole.'"  United States v. Roberson, 459 F.3d 39, 51 (1st Cir. 2006) (quoting Mullane v. Chambers, 333 F.3d 322, 330 (1st Cir. 2003)).  If the meaning of the text is unambiguous our task ends there as well.  Id.  If the statute is ambiguous, we look beyond the text to the legislative history in order to determine congressional intent.  Gen. Motors Corp. v. Darling's, 444 F.3d 98, 108 (1st Cir. 2006) (internal citations omitted).  "A statute is

-7-

ambiguous only if it admits of more than one reasonable interpretation." Id. (citing Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. #1 (In re Thinking Machs. Corp.), 67 F.3d 1021, 1025 (1st Cir. 1995)).

Section 1028A(a)(1) provides, in relevant part,

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1).[5] "Knowingly," as an adverb, modifies the verbs "transfers, possesses, or uses." The prepositional phrase "without lawful authority" is an adverb phrase that also modifies the verbs. "Means" is the direct object of the verbs, and the prepositional phrase "of identification" is an adjective phrase that modifies the direct object. Finally, the prepositional phrase "of another person" is an adjective phrase that modifies "identification." Together, "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person" is a participial phrase describing the subject "whoever."

The government argues that "knowingly," because it is an adverb, modifies the verbs, and the Fourth, Eighth, and Eleventh

---

[5] Among the felonies enumerated in § 1028A(c) are social security fraud and bank fraud. 18 U.S.C. § 1028A(c)(4) & (5).
A social security number is a "means of identification." Id. § 1028(d)(7)(A).

-8-

Circuits agree. Mendoza-Gonzalez, 520 F.3d at 915; Hurtado, 508 F.3d at 609; Montejo, 442 F.3d at 215. In a purely grammatical sense, "knowingly," as an adverb, modifies only the verbs "transfers, possesses, or uses." In interpreting § 1028A, however, we are not engaged in a purely grammatical exercise. In criminal statutes, adverbs that are also mens rea requirements frequently extend to non-verbs. See Villanueva-Sotelo, 515 F.3d at 1238 (explaining that the term "modify," when used in statutory interpretation, is better equated with the terms "'apply,' 'extend,' or 'attach.'"). Cases holding that "knowingly" extends to words and phrases other than verbs are legion. See, e.g., United States v. Edgerton, 510 F.3d 54, 57 (1st Cir. 2007) (holding that a conviction under 18 U.S.C. § 922(a)(6) requires proof that a defendant knowingly made a false statement when purchasing a firearm); United States v. Leahy, 473 F.3d 401, 408 (1st Cir. 2007) (noting that 18 U.S.C. § 922(g), the felon-in-possession statute, requires knowing possession of a firearm); United States v. Gonsalves, 435 F.3d 64, 72 (1st Cir. 2006) (affirming that 18 U.S.C. § 1001, making false statements to the government, requires that a defendant knowingly make a false statement); United States v. Hussein, 351 F.3d 9, 14 (1st Cir. 2003) (noting that under 21 U.S.C. § 841(a)(1), the government must prove that the defendant

knowingly possessed <u>a controlled substance</u>).[6] Because we interpret

a criminal statute and not an English textbook, we cannot say that

the best or even most likely reading of § 1028A(a)(1) is to limit

the adverb "knowingly" to the verbs it modifies.

The Fourth Circuit also argues that "knowingly" only

modifies the verbs "transfers, possesses, or uses" because, "good

usage" requires that it be placed "as close as possible to the

words which it modifies." <u>Montejo</u>, 442 F.3d at 215 (internal

citation omitted). Thus, the court concludes, "knowingly" cannot

modify the entire "lengthy" phrase.[7] <u>Id.</u> We are not persuaded by

---

[6] In <u>United States</u> v. <u>X-Citement Video, Inc.</u>, 513 U.S. 64 (1994), on which both parties rely, the Supreme Court applied a "knowingly" scienter requirement to non-verbs in a child pornography statute. We find this case to be inapposite. The statute at issue provided punishment for, in relevant part, "'[a]ny person who [] knowingly transports or ships . . . any visual depiction, if – [] the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct.'" <u>Id.</u> at 67-68 (quoting 18 U.S.C. § 2252 (1988 ed. and Supp. V)). The Court extended "knowingly" beyond the verbs it directly modified to "the use of a minor" because there is a "presumption in favor of a scienter requirement . . . [for] each of the statutory elements that criminalize otherwise innocent conduct." <u>Id.</u> at 72. Here, "of another person" is not an element that criminalizes otherwise innocent conduct, so the presumption does not apply. <u>X-Citement Video</u>, however, does not instruct us that we may only extend a scienter requirement to an element of a crime when there is such a presumption. Thus, it does not speak directly to our case.

[7] The Fourth Circuit appears to have mistakenly referred to the phrase in question as a predicate. <u>See</u> <u>Montejo</u>, 442 F.3d at 215. The predicate in 18 U.S.C. § 1028A(a)(1), however, is "shall . . . be sentenced to a term of imprisonment of 2 years." <u>See</u> The Chicago Manual of Style 5.23 (15th ed. 2003) (defining predicate as "the part that contains a verb and makes an assertion about the subject" and providing examples). Our phrase is a participial phrase because it begins with a participle and modifies the subject

-10-

the Fourth Circuit's reasoning.  The phrase is not very long (fifteen words out of a forty-seven word sentence), and it is one phrase out of four within the same sentence.  There are three additional phrases in the same sentence to which "of another person" does not belong.  It is as reasonable to read "knowingly" to extend to all of the words within the phrase it inhabits as it is to further divide the phrase and limit the reach of "knowingly" to just a portion of the phrase.  See X-Citement Video, 513 U.S. at 79 (Stevens, J., concurring) ("In my opinion, the normal, commonsense reading of a subsection of a criminal statute introduced by the word 'knowingly' is to treat that adverb as modifying each of the elements of the offense identified in the remainder of the subsection.").

Thus, we easily reach the conclusion that knowingly can extend beyond the verbs it directly modifies.  The question still remains, however, does it extend to "of another person"?

The District Court concluded that "knowingly" has to extend at least to "a means of identification."  Godin II, 489 F. Supp. 2d at 120; Godin I, 476 F. Supp. 2d at 2.  We agree.  Otherwise, the statute would criminalize the transfer, possession, or use of anything that contained a means of identification, e.g., a package, even if the person charged did not know that the thing he or she transferred, possessed, or used contained a means of

"whoever."  See Id. at 5.109.

-11-

identification.  As the District Court noted, such a result would be absurd.

> If during a bank conspiracy, I hand a defendant a sealed envelope asking her to transfer it and its contents to another and she knowingly does so, she has knowingly transferred the envelope and its contents.  But, if she believes my statement that the envelope contains only a birthday card when in fact it contains a forged social security card, the government surely would not contend that she should receive the enhanced penalty.

Id.; see also Villanueva-Sotelo, 515 F.3d at 1238 (reaching the same conclusion) (citing Godin I, 476 F. Supp. 2d at 2).

We are convinced our interpretation is correct to this point.  We are also convinced that whether "knowingly" extends beyond "means of identification" to its modifier "of another person" is ambiguous.  In coming to this conclusion we rely primarily on Liparota v. United States, 471 U.S. 419 (1985), in which the Court concluded that the plain text of a similarly structured statute was ambiguous.

The Court analyzed the reach of the scienter requirement in a food stamp statute that punished "'[w]hoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by this chapter or the regulations issued pursuant to this chapter.'"  Id. at 420 n.1 (quoting 7 U.S.C. § 2024(b)(1) (1982)).  The government argued that "knowingly" did not extend to "in any manner not authorized by this chapter or the regulations issued pursuant to this chapter."  Id. at 421.  The Court concluded that the text could not answer the

-12-

question. Either limiting knowingly to the verbs and their direct objects or extending it throughout the entire phrase "would accord with ordinary usage." Id. at 424.

The Court then went a step further and explained that statutes constructed in this manner are generally ambiguous. As an example, the Court noted that the mens rea requirement in a statute punishing someone who "knowingly sells a security without a permit" cannot be determined by the plain text. Id. at 424-25 n.7 (internal citation and quotation marks omitted). "As a matter of grammar the statute is ambiguous; it is not at all clear how far down the sentence the word 'knowingly' is intended to travel." Id. (internal citation and quotation marks omitted). We join with the D.C. Circuit and conclude that the text of § 1028A(a)(1) is ambiguous because the Court has determined that "text alone cannot resolve statutes structured this way." See Villanueva-Sotelo, 515 F.3d at 1241.

Because the plain meaning of the text is not clear, "we consider surrounding language and the statute's structure." Jimenez, 507 F.3d at 19. As we explained in Jimenez, § 1028A has "two variations." Id. The jury convicted Godin under the first, § 1028A(a)(1). The second, § 1028A(a)(2), provides a harsher punishment for those who commit aggravated identity theft in relation to a "terrorism offense."

> Whoever, during and in relation to any [terrorism offense] knowingly transfers, possesses, or uses, without

-13-

> lawful authority, a means of identification of another person <u>or a false identification document</u> shall in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 5 years.

18 U.S.C. § 1028A(a)(2) (emphasis added). If "knowingly" reaches "of another person" in § 1028A(a)(2), then it should also stretch to "of another person" in § 1028A(a)(1).

When arguing <u>Villanueva-Sotelo</u>, the government conceded that the scienter requirement in § 1028A(a)(2) extended to "false identification document." <u>Villanueva-Sotelo</u>, 515 F.3d at 1239. Thus, in paragraph (2), "knowingly" can reasonably be read to extend to "of another person" because it reaches all the way to "false identification document." <u>See</u> <u>id.</u> at 1239-40. We do not see that as the only plausible reading, however. A second reasonable interpretation is that "knowingly" only extends to the two direct objects and their primary modifiers: "means of identification" and "false identification documents." Thus, the statute's structure does not resolve the ambiguity.

We may also look to the title of a statute to resolve ambiguity in the text. <u>Almendarez-Torres</u> v. <u>United States</u>, 523 U.S. 224, 234 (1998). Section 1028A is entitled "Aggravated identity theft." As the D.C. Circuit noted, an element of theft is the intent to deprive another of property. <u>Villanueva-Sotelo</u>, 515 F.3d at 1243 (internal citations omitted). Thus, employing the D.C. Circuit's reasoning, "knowingly" must extend to "of another person" because, to convict someone of theft, the government must

-14-

prove that the defendant knew he or she was taking something from another.

We do not agree that the title resolves the ambiguity in the text. Congress' use of the word "theft" certainly supports the conclusion that "knowingly" extends to "of another person" and makes this interpretation eminently reasonable. See United States v. Jahagirdar, 466 F.3d 149, 153 (1st Cir. 2006) ("'[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word . . . .'") (quoting Morissette v. United States, 342 U.S. 246, 263 (1952)). We do not believe, however, that the use of the word "theft" compels a broad scienter requirement. It is also plausible that Congress intended to define "identity theft" as using someone else's identity rather than taking someone else's identity. After all, the effect on a victim's credit rating is the same whether someone (1) makes up a social security number, procures credit with that number, and does not repay or (2) steals a social security number from a database, procures credit with that number, and does not repay. It is not clear that, by using the word "theft," Congress intended to limit "identity theft" to the latter scenario.

Because the structure and title of the statute do not resolve the ambiguity in the text, we turn next to the legislative history. See Darling's, 444 F.3d at 108. Congress added § 1028A

to the United States Code through the "Identity Theft Penalty Enhancement Act," Pub. L. No. 108-275, 118 Stat. 831 (2004). The House Report accompanying the Act is replete with the terms "theft" and "thieves." "[T]he 'Identity Theft Penalty Enhancement Act[]' addresses the growing problem of identity theft." H.R. Rep. No. 108-528, at 3, as reprinted in 2004 U.S.C.C.A.N. 779, 780. One stated purpose of the statute is to increase sentences for "identity thieves."[8] Id. The report also gives examples of identity theft that fit comfortably within the traditional definition of theft: a health club employee took credit-card and social security numbers from health club members; an individual "stole" identities from multiple people and then used the false identities to file false tax returns; a woman used a "stolen identity" to apply for social security benefits. Id. at 5-6, 2004 U.S.C.C.A.N. at 781-82.

From this emphasis on "theft," the D.C. Circuit concluded that Congress intended only to punish "thieves," or those who knowingly use another's identification. Villanueva-Sotelo, 515 F.3d at 1244-45. We agree that this is a reasonable reading of the

---

[8]    In Jimenez, we noted that another purpose of the aggravated identity theft statute is to deter the use of real identifications during the commission of a crime because real identifications provide better cover than false identifications. Jimenez, 507 F.3d at 20. We do not question this explanation of the purpose of the statute, but we do not find it relevant to the current discussion. Those who use real identification so that their crimes will be harder to detect generally know that the identification belongs to another person.

legislative history.  The problem is that one can also reasonably glean from the legislative history an intent to cover actions that do not fit the traditional definition of theft.  The same House Report defines identity theft broadly:  "The terms 'identity theft' and 'identity fraud' refer to all types of crimes in which someone wrongfully obtains and uses another person's personal data . . . ."  H.R. Rep. No. 108-528, at 4, 2004 U.S.C.C.A.N. at 780.  "All crimes" could conceivably cover crimes that fall outside traditional theft.  Indeed, several of the anecdotal examples of identity theft describe crimes that did not involve stealing a means of identification from another.  In one case, a woman used her husband's social security number to collect disability benefits, and, in a similar case, a man used his brother-in-law's name and social security number to receive social security benefits.  Id. at 6, 2004 U.S.C.C.A.N. at 782.  Neither of these cases describes a crime in which the defendant stole a means of identification from another; the only victim was the government.  In another example, one closer to Godin's case, a woman received social security benefits using her social security number but used another's social security number to procure employment.  Id.  It is not clear whether or not the woman knew that the false number belonged to someone else.

    Additionally, the definition of "identity theft" given in the House Report encompasses the use of false identification to

-17-

receive immigration benefits. Id. at 4, 2004 U.S.C.C.A.N. at 780. If an undocumented immigrant purchases a social security number from a third party and uses that number to obtain employment, he or she may not know that it is assigned to another person. The third party may know that the number is a valid number, assigned to a real person, but the immigrant may not. Yet Congress arguably intended "aggravated identity theft" to cover both the crime committed by the third party and that committed by the undocumented immigrant.

Congress' use of the term "theft" and the accompanying descriptive anecdotes in the legislative history do not clearly evince congressional intent. We remain unsure whether, in codifying § 1028A(a)(1), Congress intended to increase punishment for crimes in which a person knowingly uses a false means of identification without knowing that the identification belongs to another. Thus, we conclude that the legislative history does not resolve the statute's ambiguity.

If a statute contains a "grievous ambiguity," the ambiguity must be resolved in the defendant's favor. United States v. Councilman, 418 F.3d 67, 83 (1st Cir. 2005) (en banc); see also United States v. Santos, 128 S. Ct. 2020, 2025 (2008) (plurality opinion) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them."). The rule of lenity "'applies only if, after seizing everything from

which aid can be derived, [a court] can make no more than a guess as to what Congress intended.'" Councilman, 418 F.3d at 83 (alteration in original) (quoting Reno v. Koray, 515 U.S. 50, 65 (1995)).

Using all methods of statutory construction available to us, we are unable to ascertain whether Congress intended the "knowingly" mens rea requirement to extend to "of another person." The language of § 1028A is ambiguous. The ambiguity cannot be resolved by the statutory structure, the title, or the legislative history. We hold that the rule of lenity applies, and the scienter requirement must stretch to "of another person." Thus, the District Court instructed the jury in error.

### III. Sufficiency of the evidence

Generally, if an erroneous jury instruction is not harmless error, we vacate the conviction and remand for a new trial. In the present case, however, Godin also argues that the government presented insufficient evidence to support a conviction under § 1028A(a)(1). The two analyses differ as do the necessary outcomes. United States v. Baldyga, 233 F.3d 674, 679 n.3 (1st Cir. 2000).

When examining whether the omission of an element in a jury instruction is harmless error, we ask "'whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.'" Id. at 682 (quoting Neder v.

United States, 527 U.S. 1, 19 (1999)).  If the error is not harmless, we vacate the conviction and remand for a new trial.  Id. at 679 n.3.  When examining the sufficiency of the evidence, we ask whether, viewing the evidence in the light most favorable to the jury's verdict, "a rational factfinder could find that the government proved the essential elements of its case beyond a reasonable doubt."  United States v. Marin, 523 F.3d 24, 27 (1st Cir. 2008) (citing United States v. Stark, 499 F.3d 72, 79 (1st Cir. 2007)).  If we conclude the evidence is not sufficient to support a charge, we reverse the conviction and dismiss the charge. Baldyga, 233 F.3d at 679 n.3.  When a defendant raises both arguments, we address the sufficiency of the evidence first.  If we conclude the evidence is sufficient to support a conviction, we then ask whether the jury instruction error was harmless.  If we conclude that the evidence is not sufficient to support the conviction and that a motion to acquit should have been granted, that conclusion is dispositive and we need go no further.  See id. at 682 n.8 (explaining that a court may still find that an erroneous jury instruction constitutes reversible error after finding that evidence was sufficient to support the verdict); United States v. St. Michael's Credit Union, 880 F.2d 579, 588-89 (1st Cir. 1989) (holding that evidence was sufficient to support the verdict but vacating conviction and remanding for jury trial because error in jury instruction was not harmless); United States

v. <u>Sturm</u>, 870 F.2d 769, 775 (1st Cir. 1989) (same); <u>United States</u> v. <u>Gens</u>, 493 F.2d 216, 223 (1st Cir. 1974).[9]

We review the denial of a Rule 29 motion for judgment of acquittal de novo.  <u>United States</u> v. <u>Villafane-Jimenez</u>, 410 F.3d 74, 80 n.6 (1st Cir. 2005).  In our review of the evidence presented at trial, we find nothing to support a finding that Godin knew that social security number 004-44-XXXX belonged to another person.  The false number was identical to her own except for the fourth and fifth digits.  The only inference a rational jury could make from this evidence is that Godin randomly selected the two fabricated numbers.  The Agent testified that one cannot know just by looking at a number whether it is assigned to another person because there are millions of unassigned numbers.  The Agent did not know that the number was assigned to another until he ran a search in a secure, password-protected database.  The government

_____

[9]    In <u>Gens</u>, the defendants were charged with eight counts of willfully misapplying funds from a federally-insured bank.  <u>Gens</u>, 493 F.3d at 217.  The defendants executed a scheme in which the two defendants who controlled the bank loaned money to debtors who then gave the funds to a third defendant.  <u>Id.</u> at 218-19.  The district court instructed the jury that, to reach a guilty verdict, they needed only to find that the defendants knew that loan proceeds were going to a person other than the debtors.  <u>Id.</u> at 221.  We held that this was error because the government also had to show that the defendants knew that the debtors would not repay.  <u>Id.</u> at 222.  We reversed the defendants' convictions on seven of the eight counts because substantial evidence did not support a finding of willful misapplication.  <u>Id.</u> at 223.  On the eighth count, we vacated the conviction and remanded for a new trial because the government had presented sufficient evidence for a jury to find that the defendants knew that the debtor on one of the loans would not repay.  <u>Id.</u> at 223-24.

-21-

presented no evidence showing that Godin had access to a similar database, knew the individual to whom the social security number belonged, or somehow accessed that person's information. The government concedes as much on appeal, arguing only that the evidence was sufficient for a jury to find that Godin used a number that did not belong to her, not that Godin knew it belonged to another.

Because a rational fact-finder could not find beyond a reasonable doubt that Godin knew that the false social security number was assigned to another person, we will reverse Godin's conviction for aggravated identity theft under § 1028A(a)(1).

## IV. Conclusion

For the foregoing reasons, we reverse Godin's conviction and remand with instructions to dismiss the aggravated identity theft count in the indictment, and to vacate the sentence as to Count 17.


**-Concurring Opinion Follows-**

**LYNCH**, **Chief Judge**, **concurring**. I concur in the carefully reasoned panel opinion and wish to say a few words. Under the aggravated identity theft statute, 18 U.S.C. § 1028A, Congress created a crime which has the consequence that the convicted defendant is given a mandatory consecutive sentence of two years in general, under § 1028A(a)(1), and five years in terrorism offenses, under § 1028A(a)(2), in addition to the sentence for the underlying felony. The statute itself shows how serious Congress was about increasing the mandatory sentence: section 1028A(b) expressly cuts off most of the mechanisms through which such a sentence could be reduced.

Congress was responding to the drastic upsurge in what are called identity theft crimes and which encompass a variety of situations. The identity fraud statistics considered by Congress are staggering. See, e.g., H.R. Rep. No. 108-528, at 4, as reprinted in 2004 U.S.C.C.A.N. 779, 780 ("[T]he loss to businesses and financial institutions from identity theft [is estimated] to be $47.6 billion. The costs to individual consumers are estimated to be approximately $5.0 billion."); id. at 25 (statement of Rep. Coble) ("In 2002, the FTC received 161,819 victim complaints of compromised personal information. . . . [These] victims have a difficult time consuming [sic] an expensive task of repairing a damaged credit history as well as their respective reputations."); id. at 35 (statement of Rep. Scott) ("[T]he FTC reports [consumer

identity theft] bilked almost 30 million Americans out of approximately $50 billion over the last 5 years, with about $5 billion of that out-of-pocket, unrecovered losses to consumers."); id. at 44 (statement of Rep. Jackson Lee) ("Identity theft victims now spend an average of 600 hours -- often over a period of years -- recovering from the crime. Being a victim costs an average of $1,400 in out-of-pocket expenses . . . .").

I view this appeal as presenting two basic queries. The first is whether Congress intended this identify theft offense, mandating an enhanced sentence, to apply where the defendant knew full well she was using, without lawful authority, an identification which was not her own during a felony (here bank fraud under 18 U.S.C. § 1344), but did not know beyond a reasonable doubt that the identification was that of another person. The second question is, if that was Congress's likely intent, whether Congress expressed that intent in the text of the statute in terms sufficiently clear that there is no occasion to resort to the rule of lenity, which operates in defendant's favor.

A conviction under the statute, and the consequent mandatory sentence enhancement, requires a jury (or trier of fact) to find beyond a reasonable doubt that all of the statutory requirements have been met. Cf. Apprendi v. New Jersey, 530 U.S. 466 (2000). And so the issue has been framed as one of whether the jury was correctly instructed that the knowledge needed was that

-24-

the defendant "knowingly used a means of identification without lawful authority," <u>United States</u> v. <u>Godin</u>, 489 F. Supp. 2d 118, 120 (D. Me. 2007), or whether the knowledge needed also extended to the fact that the identification used was that of another person.

The circuit courts are divided on the issue. Three circuits and the district judge here would not extend the knowledge requirement to the fact that the means of identification used was that of an another person. <u>United States</u> v. <u>Mendoza-Gonzalez</u>, 520 F.3d 912, 915 (8th Cir. 2008); <u>United States</u> v. <u>Hurtado</u>, 508 F.3d 603, 607 (11th Cir. 2007) <u>cert. denied</u>, S. Ct. ___, 2008 WL 488011 (June 9, 2008); <u>United States</u> v. <u>Montejo</u>, 442 F.3d 213, 214 (4th Cir.), <u>cert. denied</u>, 127 S. Ct. 366 (2006).

The District of Columbia Circuit, <u>United States</u> v. <u>Villanueva-Sotelo</u>, 515 F.3d 1234, 1236 (D.C. Cir. 2008), and now the panel here have concluded to the contrary: that the jury must be charged that the defendant knew the means of identification used was that of another person.

It would be beneficial if the Supreme Court resolved the mens rea issue. The circuit conflict is certainly ripe. And there are a large number of district court opinions on the issue. The issue is important and affects a large number of cases and a large number of defendants. For each of those defendants, an additional mandatory two-year sentence makes a great deal of difference.

-25-

A large number of cases are involved. The range of underlying felonies that can trigger this offense is broad. To give but a few examples of the scope of the issue, this offense can be charged when an unlawful means of identification is used in the course of Social Security fraud, 18 U.S.C. § 1028A(c)(11), passport fraud, id. § 1028A(c)(7), theft of public property, id. § 1028A(c)(1), fraud in the acquisition of a firearm, id. § 1028A(c)(3), citizenship fraud, id. § 1028A(c)(2), and other crimes.

I agree with the majority opinion that the terms of § 1028A(a)(1), taken alone, are ambiguous.[10] Based on my reading, the indications in the legislative history tend to support the district court's interpretation that the term "knowingly" does not extend as far as knowledge that the means of identification used is that of another person. In the legislative history, there are references both to thefts of the identities of other persons and to the use of false identifications, including (as here) use of Social

---

[10] There are several other ambiguities which also may affect the mens rea requirement. One is what is meant by "another person." Presumably, the statute includes past persons as well as living persons; it is also possible it was meant to include identification such as Social Security numbers held in reserve for future persons.

In addition, the statute is not clear whether the means of identification must belong to another person, as the district court interpreted it, or whether the means of identification merely must be based on the identity of another person. Those issues are not before us. There is no question here that the Social Security number here belonged to the Maine resident.

-26-

Security numbers. See H.R. Rep. No. 108-528, at 5-6. The discussion did not distinguish between the two, nor did it focus on the mens rea issue which concerns us. The opponents of the legislation based their opposition on the mandatory nature of the sentences, and not on differing views of the mens rea requirement. See 150 Cong. Rec. H4811 (statement of Rep. Scott).

It would be quite logical for Congress to impose additional punishment when the means of a crime involves the use of a false identity, both when the defendant knows the identification is "of another person" and when the defendant does not. I doubt that Congress would have intended, had it explicitly focused on the issue, to create an escape clause from the additional punishment for felons who could not be shown to have known the identification they used was that "of another person." It is not a stretch to conclude, as the district court did, that the purpose of the statute encompassed the use of the Social Security number of an innocent Maine resident whether the defendant knew the Social Security number was that person's or not. Godin, 489 F. Supp. 2d at 121.

Still, the text provides support for the other view. In favor of defendant's reading is the distinction in language between the general offense in § 1028A(a)(1) and the terrorism offense in § 1028A(a)(2), which could be read as explicitly covering knowing use of both "a means of identification of another person" and "a

false identification document."  Congress could easily have used the broader language of subsection (a)(2) in subsection (a)(1), but did not.

In this situation, guidance may come from the Supreme Court's latest opinion applying the rule of lenity, United States v. Santos, ___ U.S. ___, 128 S. Ct. 2020 (June 2, 2008).  The plurality opinion stated that there was "no more reason to think" that a key term in the statute that Congress had not defined meant one thing over another.  Id. at 2025.  That is very close to this case.  Ultimately, Justice Stevens's opinion provided the necessary vote for a majority and weighed the rule of lenity in the determination of the outcome where he believed Congress had left the term undefined but he considered that Congress could not have intended a particular result.  Id. at 2033 (Stevens, J., concurring in the judgment).  So too, here.

In the end, the Supreme Court may resolve this important question of interpretation of the present statute.  Alternatively, Congress may wish to clarify in new legislation the scope of the enhanced penalties.