# United States Court of Appeals
## For the First Circuit

No. 07-2605

UNITED STATES OF AMERICA,

Appellee,

v.

RONALD EVANO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Boudin, Lipez and Howard,

Circuit Judges.

Raymond Mansolillo with whom Law Office of Raymond Mansolillo was on brief for appellant.
Jack W. Pirozzolo, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellee.

January 22, 2009

**BOUDIN**, <u>Circuit Judge</u>. Between around August 1997 and June 2005, Ronald Evano and his wife engaged in a series of frauds by intentionally ingesting glass and then claiming that it came from food sold by various restaurants, supermarkets and hotels. To avoid detection, they used fictitious identifications and submitted false insurance claims in several different states. Evano and his wife bilked insurers of over $200,000 and incurred over $100,000 in unpaid medical bills.

On March 16, 2006, the government charged Evano in a 33-count indictment alleging various forms of fraud and false statements.[1] Evano pled guilty to 20 counts and was sentenced to 63 months imprisonment, along with supervised release and restitution requirements. This appeal is concerned with challenges to the district court's sentencing, which was based on a guideline range of 51-63 months, calculated using a total offense level of 22 and a criminal history category (CHC) of III.

The calculation began with an initial base offense level of 7, which was increased as follows: 12 levels for a loss amount between $200,000 and $400,000, U.S.S.G. § 2B1.1(b)(1)(G) (2005); 2 levels because the offense involved between 10 and 50 victims, <u>id.</u> § 2B1.1(b)(2)(A); 2 levels based on use of sophisticated means, <u>id.</u>

---

[1]Evano was indicted and charged with mail fraud, 18 U.S.C. § 1341 (2000); wire fraud, <u>id.</u> § 1343; identity fraud, <u>id.</u> § 1028(a)(7); social security fraud, 42 U.S.C. § 408(a)(7)(B) § (C)(2000); conspiracy to defraud the United States, <u>id.</u> § 371; and false statements relating to health care matters, <u>id.</u> § 1035(a).

§ 2B1.1(b)(9)(C); and 2 levels based on identity theft, id. §
2B1.1(b)(10)(C)(ii). The resulting sum was then reduced 3 levels
for acceptance of responsibility, id. § 3E1.1.

On appeal, Evano challenges the sophisticated means and
identity theft enhancements, as well as his category III criminal
history designation. We review de novo the district court's
reading of guideline provisions, United States v. Stoupis, 530 F.3d
82, 84 (1st Cir. 2008), and underlying factual findings for clear
error, id. Deference may be accorded, depending on circumstances,
to application of general standards to particular facts. United
States v. Duclos, 214 F.3d 27, 31 (1st Cir. 2000).

Evano received the two-level identity theft enhancement
for "possession of five or more means of identification that
unlawfully were produced from, or obtained by the use of, another
means of identification." USSG § 2B1.1(b)(10)(c)(ii). Evano
claims that the enhancement was inapplicable because he did not use
false information to create or obtain other documents. However,
the pre-sentence report shows that Evano used the social security
numbers of at least eight individuals in order to obtain documents
such as driver's licenses and Social Security cards. On multiple
occasions, Evano used a social security number that was not his own
to secure a Massachusetts driver's license.

Relying on United States v. Godin, 534 F.3d 51 (1st Cir.
2008), Evano also argues that the government failed to prove that

-3-

he knew the false ID information was of an actual person.  <u>Godin</u> held that the federal aggravated identity theft statute, 18 U.S.C. § 1028A(a)(1) (2006), requires that the defendant knew that the false information belonged to a real person.  The government says that the sentencing enhancement does not require such knowledge: that it is enough that he used the "means of identification."  The government is correct that <u>Godin</u> does not apply here.

The federal statute at issue in <u>Godin</u> makes it criminal for one who, "during and in relation to" a felony, "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person."  18 U.S.C. § 1028A(a)(1).  <u>Godin</u>, applying the rule of lenity, read "knowingly" to apply to "of another person," thus requiring that the defendant know that identification information pertains to an actual person.  534 F.3d at 61.  By contrast, the enhancement at issue here requires only "possession of five or more means of identification that unlawfully were produced from, or obtained by the use of, another means of identification."  The enhancement provision--unlike the statute-- does not use the word "knowingly."

Sentencing enhancements often apply even without a strong mens rea requirement.  <u>United States</u> v. <u>Figuereo</u>, 404 F.3d 537, 541 (1st Cir. 2005); <u>United States</u> v. <u>Lavender</u>, 224 F.3d 939, 941 (9th Cir. 2000).  Here, the "legislative history" of the enhancement, adopted pursuant to a statutory directive, bears out this reading.

-4-

As the Sentencing Commission explained, the guideline sought to address Congress' concern with the harm suffered by the victims rather than the mens rea of the defendant. U.S.S.G. Supplement to Appendix C, Amendment 596 (statute instructed the Commission to consider the number of victims, harm to their reputations, and inconvenience produced by the theft of their identities).

Indeed, in construing an adjacent subsection of the same identity theft provision, U.S.S.G. § 2B1.1(b)(9)(C)(i) (enhancement "[i]f the offense involved . . . the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification"), the Seventh Circuit held that the provision does not require that one know that the means of identification relates to a real person. United States v. Cisse, 103 Fed. Appx. 27, 29-30 (7th Cir. 2004) (unpublished opinion) (saying "[i]t is not unforeseeable or even unlikely that a made-up social security number will turn out to belong to a real person").

Evano also challenges the district court's two-level enhancement for "use of sophisticated means," USSG § 2B1.1(b)(9)(c). He contends that use of false identification is not a "sophisticated" means of carrying out a fraud but rather quite typical, and therefore already punished by the sentence dictated by the statute and guidelines base offense level. But the district judge imposed the sophisticated means enhancement not

simply because Evano used false IDs and documents but because he undertook elaborate efforts to conceal his scheme.

The district court's reading of the guideline was sound and its application reasonable. The commentary, USSG 2B1.1(b)(9)(C), cmt. n.8(B), instructs that

> [f]or purposes of subsection (b)(9)(C), "'sophisticated means'" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means.

The scheme may be sophisticated even if the individual elements taken alone are not. United States v. Jackson, 346 F.3d 22, 25 (2nd Cir. 2003).

Here, the Evanos targeted multiple restaurants, hotels, supermarkets, hospitals, doctors and insurance companies in several different regions, including Massachusetts, Rhode Island, Maryland, Virginia and the District of Columbia. They used fictitious names, fake identifications such as false social security numbers, and most importantly, they actually ingested glass particles. All this was enough to make their scheme more effective and difficult to thwart, and it is enough to justify the enhancement.

Finally, Evano does not dispute that his offenses were scored correctly under the guidelines and formally place him in criminal history category III; but he argues that this assessment overstates the seriousness of his criminal past. He says that none

-6-

of his prior convictions involved violent crimes or drug offenses. Rather, they involved motor vehicle violations, one DUI, larceny, theft and shoplifting.

Whether this attack is permitted might be debated. Insofar as Evano is claiming that the district judge should have "departed" from the guideline's category III designation, the district court's decision is unreviewable unless based on a misapprehension by the judge of his own authority, United States v. Richardson, 515 F.3d 74, 86 (1st Cir. 2008), and of this there is no evidence.  To the extent the claim is framed as a post-Booker challenge to the overall reasonableness of the sentence, the district court's explanation as to criminal history is reasonable:

> My sense is that the criminal history is, indeed, long and I think, on the other hand, the nature of the offenses is not the sort that we see in the gun and drug cases.  There is no violence.  There is no life-endangering activity.  It's mostly driving without a license, shoplifting, disorderly conduct, and the like.
>
> On the other hand, it is, as I said before, relentless, and by virtue of the fact that it is relentless, Mr. Evano is a danger to the society.  He simply does not respect the rules under which we work.
>
> Nonetheless, I think that the Criminal History Category 3 properly reflects both the length and the nature of the offenses and will, therefore, agree with the probation report that Criminal History Category 3 is the

correct one, and will go neither up nor down
on the Criminal History Category.[2]

It is not drugs and violence alone that mark out someone as habitually criminal.  The present scheme, although treated as a continuing pattern of fraud, endured over a long period; it doubtless caused much trouble and disruption; and even probation status did not deter Evano from halting his criminal conduct.  There is nothing in the district court's assessment that is unreasonable.

Affirmed.

---

[2]The  sentencing  judge's  final  remark  is  in  respect  to  a request by the government to depart upward to a CHC IV.